Keith Beauchamp (012434)
Roopali H. Desai (024295)
**Coppersmith Brockelman PLC**
2800 North Central Avenue, Suite 1900
Phoenix, Arizona 85004
T: (602) 381-5490
F: (602) 224-0999
kbeauchamp@cblawyers.com
rdesai@cblawyers.com

Paul G. Karlsgodt (Admitted *Pro Hac Vice*)
Casie D. Collignon (Admitted *Pro Hac Vice*)
**Baker & Hostetler LLP**
1801 California Street, Suite 4400
Denver, Colorado 80202-2662
T: (303) 861-0600
ccollignon@bakerlaw.com

*Attorneys for Defendants*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| IN RE: BANNER HEALTH DATA BREACH LITIGATION | No. 2:16-cv-02696-PHX-SRB<br><br>**DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**<br><br>**(Oral Argument Requested)** |

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Banner Health ("Banner") moves this Court to dismiss Plaintiffs Howard Chen's, Betty Clayton's, Stacey Halpin's, Kim Maryniak's, Summer Sadira's, and Stan Griep's (collectively, "Plaintiffs") seventh cause of action (breach of an implied contractual term) and eighth cause of action (promissory estoppel) for failure to state a claim upon which relief can be granted.

Pursuant to LRCiv 12.1(c), Banner notified Plaintiffs on February 11, 2018 of its intention to file and the grounds for this motion. Plaintiffs have not responded to Banner. Thus, the parties have not agreed that the SAC is curable by a permissible amendment.

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1
II. PROCEDURAL HISTORY ..... 2
III. RELEVANT ALLEGATIONS ..... 3
  A. Allegations in Both the Complaint and the SAC ..... 3
    1. "Privacy Practices for Banner Health" Webpage ..... 3
    2. "Notice of Privacy Practice" ..... 4
    3. "Medical Treatment Agreement" ..... 4
    4. "Condition of Admission and Treatment Form" ..... 4
    5. "Behavioral Health Client Rights Document" ..... 5
    6. "Privacy Practices in Banner Plans" ..... 5
    7. "Summary Plan Description Booklet" ..... 5
    8. "Employee Handbook" ..... 6
  B. Allegations in the SAC Only ..... 6
IV. STANDARD FOR MOTION TO DISMISS ..... 6
V. LEGAL ARGUMENT ..... 7
  A. Plaintiffs Fail to State a Claim for Breach of an Implied Term. ..... 7
    1. None of Banner's statements give rise to an implied-in-fact duty to safeguard PII and PHI. ..... 8
    2. Banner's conduct did not create an implied-in-fact duty to secure PII and PHI. ..... 9
  B. Plaintiffs Fail to State a Claim for Promissory Estoppel. ..... 11
VI. CONCLUSION ..... 13


BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................ 6, 7

*Balistreri v. Pacifica Police Dep't.*,
901 F. 2d 696 (9th Cir. 1990) ........................................ 6

*In re Bashas' Inc.*,
468 B.R. 381 (D. Ariz. 2012) ........................................ 11

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................ 6, 7

*Board of Trustees of Marana Elementary School, District No. 6 v. Wildermuth*,
16 Ariz. App. 171, 492 P.2d 420 (1972) ........................................ 11

*De Los Reyes v. Sw. Gas Corp.*,
319 F. App'x 639 (9th Cir. 2009) ........................................ 12

*Demasse v. ITT Corp.*,
194 Ariz. 500 (1999) ........................................ 8, 9

*Double AA Builders, Ltd. v. Grand State Const. L.L.C.*,
210 Ariz. 503, 114 P.3d 835 (App. 2005) ........................................ 11, 13

*Duncan v. St. Joseph's Hosp. & Med. Ctr.*,
183 Ariz. 349 (App. 1995) ........................................ 8

*Helash v. Ballard*,
638 F.2d 74 (9th Cir. 1980) ........................................ 8

*Higginbottom v. State*,
203 Ariz. 139, 51 P.3d 972 (App. 2002) ........................................ 11

*Huey v. Honeywell, Inc.*,
82 F.3d 327 (9th Cir. 1996) ........................................ 10

*Knight v. Rice*,
83 Ariz. 379 (1958) ........................................ 12

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

*Meritage Homes of Arizona, Inc. v. Bingham Eng'g Consultants, LLC*, No. 1, CA-CV 13-0072, 2014 WL 2592354, at *2 (Ariz. Ct. App. June 10, 2014) ........ 7, 9, 10

*Moreno v. Minnesota Life Ins. Co.*, No. CV 14-2022-TUC-FRZ, 2015 WL 1457419 (D. Ariz. Mar. 30, 2015) ........ 13

*Pareto v. F.D.I.C.*, 139 F.3d 696 (9th Cir.1998) ........ 7

*Pyeatte v. Pyeatte*, 135 Ariz. 346 (App. 1982) ........ 9

*Rawlings v. Apodaca*, 151 Ariz. 149 (1986) ........ 7

*Reyes v. Revlon Consumer Prod. Corp.*, No. 2:12-CV-1456-HRH, 2013 WL 12250530 (D. Ariz. Mar. 28, 2013) ........ 10

*Roberson v. Wal-Mart Stores, Inc.*, 202 Ariz. 286, 44 P.3d 164 (App. 2002) ........ 7

*School District No. 69 of Maricopa County v. Altherr*, 10 Ariz. App. 333, 458 P.2d 537 (1969) ........ 11

*Soderlun v. Public Serv. Co.*, 944 P.2d 616 (Colo.App.1997) ........ 8

*Stilwell v. City of Williams*, 668 F. App'x 227 (9th Cir. 2016) ........ 10

*Zancanaro v. Cross*, 85 Ariz. 394 (1959) ........ 7

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ........ 1, 6

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

## I. INTRODUCTION

Plaintiffs' Second Consolidated Class Action Complaint ("SAC") is a thinly-veiled attempt to get another bite at the apple. In their Consolidated Amended Class Action Complaint ("Complaint"), Plaintiffs asserted a breach of contract claim and a breach of the implied covenant of good faith and fair dealing claim. Plaintiffs alleged that either one, or some combination, of eight different documents constituted an enforceable promise by Banner to protect their personally identifying information ("PII"), protected health information ("PHI"), and payment card information ("PCI"). Banner moved to dismiss those claims on the ground that no such promise existed, and the Court agreed.

Now Plaintiffs claim that although Banner's "promise" was neither express nor implied by law, it was still implied-in-fact. According to Plaintiffs, the same statements this Court found individually to be nothing more than an affirmation by Banner to comply with the law, constitute an enforceable, implied promise to safeguard PII and PCI when considered collectively. They do not. For Banner's statements to give rise to an implied contractual term, they must disclose Banner's "promissory intent" to safeguard PII and PHI or allow Plaintiffs to "reasonably conclude" that Banner made such a commitment. The statements cited by Plaintiff do neither. This Court has already held that the statements do not constitute a promise to safeguard PII and PHI; they merely reiterate the law. And Banner's reference to possible breaches and its response thereto necessarily precludes any "reasonable" belief that Banner was guaranteeing PII and PHI security by implication.

Plaintiffs also try to establish an enforceable obligation to safeguard their PII and PHI by asserting a promissory estoppel claim. The problem, however, is that promissory estoppel requires an actual promise, which this Court has already held that Plaintiffs cannot allege. Furthermore, Plaintiffs have not alleged that any given Plaintiff read or relied on any particular statement by Banner that they argue constitutes a promise, which also defeats their claim.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

The Court already properly dismissed Plaintiffs' contract claims. For the same reasons their breach of contract claims were dismissed, their breach-of-an-implied-term and promissory estoppel claims should be dismissed—Banner never promised or implied that they would promise to safeguard their PII, PHI, or PCI. Banner respectfully requests that the Court grant its Motion to Dismiss.

## II. PROCEDURAL HISTORY

On April 6, 2017, Plaintiffs filed their Complaint. (Dkt. 71.) Plaintiffs asserted against Banner seven causes of action: (1) Negligence, (2) Negligence Per Se, (3) Breach of Contract, (4) Breach of the Implied Covenant of Good Faith and Fair Dealing, (5) Breach of the Implied Duty to Perform with Reasonable Care, (6) Unjust Enrichment, and (7) Violation of the Arizona Consumer Fraud Act. (*See id.*)

On April 14, 2017, Banner filed its Motion to Dismiss the Complaint. (Dkt. 76.) Banner argued, among other things, that Plaintiffs had failed to allege that Banner made an affirmative and enforceable promise to guaranty or provide a particular level of data security. (*Id.* at 9:6-8.)

On December 20, 2017, the Court granted in part and denied in part Banner's Motion to Dismiss ("Order"). (Dkt. 106.) The Court denied Banner's Motion to Dismiss Plaintiff's claims for negligence, negligence per se, unjust enrichment and violation of the Arizona Consumer Fraud Act, but granted it with respect to Plaintiffs' breach of contract, breach of the implied covenant of good faith and fair dealing, and breach of the implied duty of reasonable care claims. (*See id.*)

In reaching its decision, the Court found that the "agreements between [Banner] and the Patient and Insurance Plan Plaintiffs….do not contain reasonably ascertainable express promises to maintain data security above and beyond [Banner's] preexisting duties under the law." (*Id.* at 7:18-22). The Court further found that if any promise existed, it was the promise "only to notify those affected" by a data breach, which Plaintiffs did not allege Banner failed to do. (*Id.* at 8:12-14.)

The Court reached a similar conclusion with regard to the alleged promises in Banner's Summary Plan Description and its accompanying "Privacy Practices in Banner Plans." (*Id*. at 8:15-23 (finding the alleged promises "make no reasonably ascertainable promise above and beyond that which [Banner] was already required to do by law")).

And finally, with regard to the employee handbook, the Court found that "[a]ll of the language alleged by Plaintiffs…expresses [Banner's] employees' obligations to keep information learned at work confidential, rather than any obligations for Defendant to keep information confidential." (*Id*. at 8:25-9:3.)

After the Court issued its Order, Plaintiffs requested that Banner stipulate to allow Plaintiff to file their SAC, which Banner agreed to do. (Dkt. 108.)

On January 23, 2018, Plaintiffs filed their SAC. (Dkt. 115, SAC.) As discussed more thoroughly below, in their SAC, Plaintiffs added two new causes of action—breach of an implied contractual term and promissory estoppel—and just six paragraphs to their "Facts" section. (*See id* at ¶¶ 91, 112-115, 192.)

## III. <u>RELEVANT ALLEGATIONS</u>

### A. <u>Allegations in Both the Complaint and the SAC</u>

The six named Plaintiffs in this case allege that they are former patients of Banner. (SAC, ¶¶ 12, 19, 27, 40, 46, 52.). Three of the six Plaintiffs also claim to be current or former employees (Chen, Halpin, and Maryniak). (*Id*. at ¶¶ 11, 29, 38.) These same three Plaintiffs allege they are current or former Banner insurance plan members (*id*. at ¶¶ 12, 30, 39) (collectively, "insurance Plaintiffs").

Each of the six named Plaintiffs allege they entered into a written contract with Banner. (SAC, ¶ 97.) Furthermore, they claim that their written contracts consist of or incorporate by reference one (or more) of the following eight different Banner documents. (*Id*. at ¶¶ 95-111.)

#### 1. <u>"Notice of Privacy Practice"</u>

Plaintiffs allege that Banner's "Notice of Privacy Practices" is provided "to all patients and insurance plan members when they first enter contractual relationships with



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

Banner." (*Id.* at ¶¶ 96-97.) According to Plaintiffs, the "Notice of Privacy Practice" is also incorporated by reference into Banner's patient registration forms. (*Id.* at ¶ 97.)

Plaintiffs allege that the "Notice of Privacy Practice" states that Banner is "committed to protecting the confidentiality of information about you, and is required to do so by law." (*Id.* at ¶ 96.) Plaintiffs also allege that the "Notice of Privacy Practice" "lists a set of limited situations in which personal information can be disclosed, including for research, operational, public safety, and other express reasons," and states that " '[o]ther uses and disclosures not described…will be made only with your written authorization….' " (*Id.* at ¶ 99 (alternations in original).) The Court has already held that nothing in the "Notice of Privacy Practice" is an enforceable promise to safeguard PII or PHI. (Dkt. 106, 8:4-11.)

2. <u>"Privacy Practices for Banner Health" Webpage</u>

Plaintiffs allege that the language in the "Notice of Privacy Practices" is also included on Banner's "Privacy Practices for Banner Health" webpage. (SAC, ¶ 96.) As noted above, this Court has already held that these statements are not enforceable promises to safeguard PII or PHI. (Dkt. 106, 8:4-11).

3. <u>"Medical Treatment Agreement"</u>

Plaintiffs allege that Banner's "Medical Treatment Agreement" requires patients to both (1) " 'acknowledge[] and agree[] that medical and/or financial records…may be provided to' healthcare providers, researchers for medical purposes, individuals, and entities 'as specified by federal and state law and/or in Banner's Notice of Privacy Practices' and within Banner for appropriate patient care" and (2) affirm that the patient has "received the Notice of Privacy Practices." (*Id.* at ¶ 100.) Again, the Court has already held that nothing in the "Medical Treatment Agreement" is an enforceable promise to safeguard PII or PHI. (Dkt. 106, 7:18-22.)

4. <u>"Condition of Admission and Treatment Form"</u>

Plaintiffs allege that Banner's "Condition of Admission and Treatment" mandates that the patient acknowledge receipt of the Notice of Privacy Practices." (*Id.* at ¶ 101.)



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

Once again, the Court has already held that nothing in the "Condition of Admission and Treatment" is an enforceable promise to safeguard PII or PHI. (Dkt. 106, 7:18-22.)

5. "Behavioral Health Client Rights Document"

Plaintiffs allege that Banner's "Behavioral Health Client Rights Document" states that a patient has the right to "have [his or her] information and records kept confidential and released only as permitted under R9-20-211(A)(3) and (B)" and to "privacy in treatment…." (*Id.* at ¶ 102.) The Court has also already held that nothing in the "Behavioral Health Client Rights Document" is an enforceable promise to safeguard PII or PHI. (Dkt. 106, 7:18-22.)

6. "Privacy Practices in Banner Plans"

Plaintiffs allege that Banner's "Privacy Practices in Banner Plans" contains "substantially similar language in relevant part as the Notice of Privacy Practices referenced above, and it forms part of the contract between Banner and all of Banner's insurance health plan members." (*Id.* at ¶ 103.) Again, the Court has held that nothing in the "Privacy Practices in Banner Plans" is an enforceable promise to safeguard PII or PHI. (Dkt. 106, 8:15-23.)

7. "Summary Plan Description Booklet"

Plaintiffs allege that Banner's "Summary Plan Description Booklet" is incorporated into and part of the "Master Health and Welfare Plan" and reiterates that Banner "is committed to protecting [the patient's] private and personal health information." (SAC at ¶ 104.) Plaintiffs further allege that in the "Summary Plan Description Booklet" Banner states that it "has and will continue to enter into agreements with service providers, referred to as 'business associates,' that contractually protect your personal health information under the same guidelines as used by Banner." (*Id.*) The "Summary Plan Description Booklet," Plaintiffs allege, also states that "Banner will not disclose your personal health information without your prior written consent or authorization, except as necessary for your treatment, payment for services recorded, health care operations or as otherwise permitted by law." (*Id.*) Once again, the Court has



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

held that nothing in the "Summary Plan Description Booklet" is an enforceable promise to safeguard PII or PHI. (Dkt. 106, 8:15-23.)

8. "Employee Handbook"

Finally, Plaintiffs allege that Banner's Employee Handbook affirms Banner's "legal and ethical responsibility to safeguard confidential information." (SAC at 109.) The Court, however, has already found that none of the language from the Employee Handbook imposes "any obligations for Defendant to keep information confidential." (Dkt. 106, 8:25-9:3.)

**B. Allegations in the SAC Only**

Based on the above allegations, Plaintiffs allege that "Banner explicitly and implicitly promised, represented, and warranted that it would protect the privacy and confidentiality" of the Plaintiffs' PII, PHI, and PCI. (SAC, ¶ 91.) Plaintiffs allege that the express contracts "included implied terms requiring Banner to implement data security adequate to safeguard and protect the confidentiality of Plaintiffs' and Class Members' PII and PHI" and that "[d]ata security…was an essential implied term of the express contracts…" (*Id.* at ¶¶ 112-113.) Further, according to Plaintiffs, "no reasonable person would have provided such information had they known of the significant flaws in Banner's information-security systems…." (*Id.* at ¶ 192.)

## IV. STANDARD FOR MOTION TO DISMISS

A complaint is subject to dismissal under Federal Rule of Civil Procedure 12(b)(6) if there are insufficient facts alleged under a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't.*, 901 F. 2d 696, 699 (9th Cir. 1990). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal* ("*Iqbal*"), 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly* ("*Twombly*"), 550 U.S. 544, 556 (2007)). "Facial plausibility" requires factual allegations "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556 (2007)). Although a complaint "does not



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

need detailed factual allegations," the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555); *see also Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998) (holding that "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss").

## V. LEGAL ARGUMENT

### A. Plaintiffs Fail to State a Claim for Breach of an Implied Term.

Under Arizona law, an "implied promise arising out of the expressed provisions of the contract is as much a part of the contract as a written one, and is subject to the same penalties for breach." *Zancanaro v. Cross*, 85 Ariz. 394, 398 (1959). "Implied promises" come in two forms: implied-in-law and implied-in-fact. *Meritage Homes of Arizona, Inc. v. Bingham Eng'g Consultants, LLC*, No. 1 CA-CV 13-0072, 2014 WL 2592354, at *2 (Ariz. Ct. App. June 10, 2014) ("Arizona recognizes that contracts may have implied-in-fact terms…"); *Rawlings v. Apodaca*, 151 Ariz. 149, 153, (1986) ("The law implies a covenant of good faith and fair dealing in every contract.").

An implied-in-law term, like the covenant of good faith and fair dealing, is inescapable; the duty "arises by virtue of a contractual relationship." *Rawlings*, 151 Ariz. 149, 153 (1986). An implied-in-fact term, on the other hand, "is one that is inferred from the statements or conduct of the parties…." *Roberson v. Wal-Mart Stores, Inc.*, 202 Ariz. 286, 291, 44 P.3d 164, 169 (App. 2002).

Plaintiffs have already tried and failed to allege an implied-in-law term. (Dkt. 106 at 10:13-23 (dismissing Plaintiffs' breach of the implied duty of good faith and fair dealing claim.) Plaintiffs now assert that the duty to keep their PII and PHI secure was not implied by law, but instead implied-in-fact. (*See* SAC, ¶¶ 91, 112-115, 353-363.) This argument fails because none of Banner's alleged statements or actions implied an obligation to protect PII or PHI beyond the pre-existing duties imposed by state and federal law independent of any contact.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

1. <u>None of Banner's statements give rise to an implied-in-fact duty to safeguard PII and PHI.</u>

Although generally in the employment context, Arizona courts have held that a defendant's statements may give rise to an implied-in-fact contractual term. *See, e.g., Demasse v. ITT Corp.*, 194 Ariz. 500, 505 (1999); *Duncan v. St. Joseph's Hosp. & Med. Ctr.*, 183 Ariz. 349, 353 (App. 1995). A statement, however, only creates an implied-in-fact term "if it discloses 'a promissory intent or [is] one that the [plaintiff] could reasonably conclude constituted a commitment by the [defendant].' " *Demasse*, 194 Ariz. at 505 (quoting *Soderlun v. Public Serv. Co.*, 944 P.2d 616, 620 (Colo. App. 1997)). If the statement is "merely a description of the [defendant's] present policies ... it is neither a promise nor a statement that could reasonably be relied upon as a commitment." *Id.* None of the statements upon which Plaintiffs base their implied-in-fact term claim discloses a "promissory intent" on the part of Banner to safeguard Plaintiffs' PII and PHI.

As an initial matter, in support of their breach of an implied term claim, Plaintiffs simply rely on the same statements they included in their Complaint, none of which the Court found gave rise to an enforceable commitment to safeguard PII or PHI. (Dkt. 106 at 7:18-22, 8:15-23, 8:25-9:3.) Plaintiffs' claim, therefore, is that the sum of numerous unenforceable statements somehow creates an enforceable implied-in-fact term. That is not the law; implied-in-fact terms, like express terms, must be supported by consideration. *Helash v. Ballard*, 638 F.2d 74, 75 (9th Cir. 1980) ("The obligations of parties to a contract implied in fact, like those of parties to an express contract, must be supported by consideration."). Thus, Plaintiffs' new implied in fact contract claim fails for the exact same reason their prior contract claims failed—it lacks consideration. (Dkt. 106 at 7:18-22, 8:15-23 (Plaintiffs have alleged no facts that would give rise to a "reasonable promise above and beyond that which [Banner] was already required to do by law."))

Second, none of the statements cited by Plaintiffs in their SAC is one that Plaintiffs could "reasonably conclude constituted a commitment by" Banner to safeguard their PII and PHI. *Demasse*, 194 Ariz. at 505. The statements "merely describe [Banner's] present



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

policies." *Id.* For example, Plaintiffs allege that Banner's "Notice of Privacy Practices" states that Banner is "committed to protecting the confidentiality of information about you, and is required to do so by law." (SAC at ¶¶ 96-97.) Being "committed" to achieving a goal is not a promissory intent to guaranty data security.

Third, Plaintiffs allege that the "Notice of Privacy Practice "lists a set of limited situations in which personal information can be disclosed, including for research, operational, public safety, and other express reasons," and states that " '[o]ther uses and disclosures not described…will be made only with your written authorization….'" (*Id.* at ¶ 99 (alternations in original).) Promising not to affirmatively disclose, except in certain circumstances, personal information without written authorization does not demonstrate a promissory intent to protect PII or PHI from highly sophisticated criminal hackers.

Finally, as this Court noted in its Order, some of the statements cited by Plaintiffs actually demonstrate that Banner was affirmatively **not** promising to safeguard PHI and PII. In its "Privacy Practices in Banner Plans," Banner affirmatively states that it "will notify [the individual] if there is a breach of [his or her] unsecured protected health information." (*Id.* at ¶ 103.) This statement describing Banner's obligations in the event of a breach affirmatively states that breaches may happen and is directly contrary to any alleged implication by any given Plaintiff that Banner intended to imply a contractual term to safeguard their PHI and PII against all data security breaches.

2. Banner's conduct did not create an implied-in-fact duty to secure PII and PHI.

Another way to prove the existence of an implied-in-fact term is through the conduct of the parties. *Pyeatte v. Pyeatte*, 135 Ariz. 346, 353 (App. 1982) ("An implied-in-fact contract is a true contract, differing from an express contract only insofar as it is proved by *circumstantial evidence* rather than by express written or oral terms." (emphasis added)); *see also Meritage Homes of Arizona, Inc.*, 2014 WL 2592354, at *3. For example, in *Meritage Homes of Arizona, Inc.*, the court found that the defendant was under "not only an obligation to provide designs but an implied-in-fact obligation to

provide adequate designs" (*i.e.*, designs that were capable of "supporting tile floors and granite countertops"). *Id.* In reaching this decision, the court cited the parties' "long history of business relations" during which the defendant "provid[ed] structural engineering services to [the plaintiff] for many years and serv[ed] as the exclusive provided for several years." *Id.* at *2.

The Ninth Circuit reached a similar conclusion in *Huey v. Honeywell, Inc.*, 82 F.3d 327 (9th Cir. 1996). There, the plaintiff argued that this employment relationship had an implied-in-fact term that required his employer to institute progressive discipline before terminating him. *Id.* at 331. The Ninth Circuit agreed with the plaintiff based, in part, on the fact that the employer had "progressively disciplined, rather than terminated, [other employees] for violating company policies." *Id.* at 332.

Here, unlike in *Meritage Homes of Arizona, Inc.* and *Huey*, Plaintiffs' allegations are insufficient to show that anything Banner did or did not do gave rise to an implied-in-fact term of data security. Plaintiffs do not allege that in all or even one of their prior dealings with Banner, Banner promised to keep their PII and PHI secure. Nor do they allege that Banner kept other individuals' PII and PHI secure, but failed to do so with regard to them.

Plaintiffs also allege that "by its acceptance of" Plaintiffs' and putative Class Members' PII and PHI, Banner "implicitly promised and agreed to safeguard" their PII and PHI. (SAC ¶ 358.) This argument fails because as Arizona case law makes clear, to imply a promise to do something not otherwise required by law, the alleged promisor must act in a manner inconsistent with his legal obligations. *See, e.g.*, *Huey*, 82 F.3d at 332 (finding question of fact as to existence of implied term based on employer's conduct that was inconsistent with Arizona's at-will employment standard); *Stilwell v. City of Williams*, 668 F. App'x 227, 229 (9th Cir. 2016) (same); *Reyes v. Revlon Consumer Prod. Corp.*, No. 2:12-CV-1456-HRH, 2013 WL 12250530, at *3 (D. Ariz. Mar. 28, 2013) (same). The "acceptance" of PII and PHI is not inconsistent with Banner's preexisting obligations because a healthcare provider like Banner has to have PII and PHI in order to



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

provide healthcare services and to facilitate payment for those services. Therefore, the alleged acceptance of this information does not create implied duties beyond its pre-existing contractual and statutory duties.

Because Plaintiffs have not alleged sufficient facts to demonstrate that Banner—whether through its statements or conduct—impliedly promised to safeguard their PII and PHI, Plaintiffs have failed to state a claim for breach of an implied term. Therefore, Banner respectfully requests that the Court grant its Motion to Dismiss.

**B. <u>Plaintiffs Fail to State a Claim for Promissory Estoppel.</u>**

To prove promissory estoppel, the plaintiff must show (1) that the defendant made a promise, (2) that the defendant should have reasonably foreseen that the plaintiff would rely on that promise, and (3) that the plaintiff actually relied on the promise to his detriment. *Higginbottom v. State*, 203 Ariz. 139, 144, 51 P.3d 972, 977 (App. 2002). Furthermore, "if these elements are proven, the promise 'is binding if injustice can be avoided only by enforcement of the promise.' " *Double AA Builders, Ltd. v. Grand State Const. L.L.C.*, 210 Ariz. 503, 507, 114 P.3d 835, 839 (App. 2005) (quoting Restatement (Second) of Contracts § 90(1)); *see also In re Bashas' Inc*., 468 B.R. 381, 383 (D. Ariz. 2012) (finding promissory estoppel inapplicable because there was no injustice). Plaintiffs here have not alleged sufficient facts to establish any of promissory estoppel's three elements, and, even if they had, promissory estoppel would still be inapplicable because there is no injustice.

First, as discussed at length above, Plaintiffs have not alleged the existence of any promise by Banner —whether express or implied—to safeguard their PHI and PII. Therefore, their promissory estoppel claim fails. *School District No. 69 of Maricopa County v. Altherr*, 10 Ariz. App. 333, 458 P.2d 537 (1969), disapproved in part on other grounds by *Board of Trustees of Marana Elementary School, District No. 6 v. Wildermuth*, 16 Ariz. App. 171, 173, 492 P.2d 420, 422 (1972) (holding that absent a promise, plaintiffs have no claim for promissory estoppel).

Second, without a promise to safeguard Plaintiffs' PII and PHI, Plaintiffs have not, and necessarily cannot, allege facts sufficient to demonstrate that Banner should have reasonably foreseen that Plaintiffs would rely or that Plaintiffs actually did rely on this nonexistent promise.

Third, even assuming that such a promise exists (it does not), Plaintiffs have not adequately alleged that they reasonably relied on the promise to their detriment. As the Arizona Supreme Court held in *Knight v. Rice*, 83 Ariz. 379, 382 (1958): "It is, of course, elementary that the [plaintiff] cannot claim the benefit of estoppel without clear and satisfactory proof that he changed his position to his detriment ***as a direct result of the conduct of the adverse party***." (emphasis added).

Although Plaintiffs provide a list of documents that they claim constitute a promise by Banner to safeguard their PII and PHI, they do not allege that they read these documents before providing Banner with their PII and PHI. Nor do they allege which of the six Plaintiffs read which of the eight documents they cite. They merely allege in conclusory fashion that they "justifiably and expressly relied on these representations by supplying Banner with their PII and PHI." (SAC, ¶ 367.) The Court can and should disregard such conclusory statements. *De Los Reyes v. Sw. Gas Corp.*, 319 F. App'x 639, 641 (9th Cir. 2009) ("Conclusory allegations of law ... are insufficient to defeat a motion to dismiss and a formulaic recitation of the elements of a cause of action will not do." (internal quotations and citations omitted.)

For example, it would be impossible for three of the named Plaintiffs (Clayton, Sadira, and Griep) to have read the Employee Handbook because they were never Banner employees. Additionally, while the Plaintiffs all allege to have received treatment from Banner, none claims to have received behavioral health treatment. Thus, none has even set forth a reason as to why they would have received Banner's "Behavioral Health Client Rights Document," let alone reviewed it.

Unless and until each of the six Plaintiffs allege which of the eight documents they read and when, they have not sufficiently alleged reliance under a promissory estoppel

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

theory. *Moreno v. Minnesota Life Ins. Co.*, No. CV 14-2022-TUC-FRZ, 2015 WL 1457419, at *10 (D. Ariz. Mar. 30, 2015) (dismissing promissory estoppel claim based on plaintiff's failure to allege that "she was even aware of the" promise).

Finally, Plaintiffs' promissory estoppel claim should be dismissed because justice does not require its application. Unlike most cases in which promissory estoppel is asserted, Plaintiffs here have plenty of other avenues through which to seek their alleged damages. *See, e.g.*, *Double AA Builders, Ltd*, 210 Ariz. at 508 (applying promissory estoppel to provide party viable cause of action where no others existed). Indeed, they have asserted four other causes of action, all of which have survived dismissal. (*See* SAC.)

Plaintiffs have failed to adequately allege their claim for promissory estoppel. Therefore, Banner respectfully requests that the Court grant its Motion to Dismiss.

## VI. CONCLUSION

For the foregoing reasons, Banner respectfully requests that Plaintiffs' breach-of-an-implied-term and promissory estoppel causes of action be dismissed.

Respectfully submitted this 15th day of February, 2018.

**BAKER & HOSTETLER LLP**

By: *s/Casie D. Collignon*
Casie D. Collignon
Paul G. Karlsgodt

**COPPERSMITH BROCKELMAN PLC**
Keith Beauchamp
Roopali H Desai

*Attorneys for Defendants*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

**CERTIFICATE OF SERVICE**

I hereby certify that on February 15, 2018, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

*s/Casie D. Collignon*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER