Andrew S. Friedman (005425)
William F. King (023941)
**BONNETT FAIRBOURN FRIEDMAN**
   **& BALINT, P.C.**
2325 E. Camelback Road, Suite 300
Phoenix, Arizona 85016
Telephone: (602) 274-1100
afriedman@bffb.com
bking@bffb.com

Paul L. Stoller (016773)
**DALIMONTE RUEB STOLLER, LLP**
2425 E. Camelback Road, Suite 500
Phoenix, Arizona 85016
Telephone: (602) 888-2807
paul@drlawllp.com

*Interim Co-Lead Class Counsel*

[Additional counsel appear on signature page]

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re Banner Health Data Breach Litigation | Case No. 2:16-cv-02696-PHX-SRB |

## MOTION AND MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' (1) MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, (2) PRELIMINARY CERTIFICATION OF SETTLEMENT CLASS, AND (3) APPOINTMENT OF SETTLEMENT CLASS COUNSEL AND CLASS REPRESENTATIVES

# REDACTED

# TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................................1

II.   SUMMARY OF ARGUMENT .............................................................................2

III.  FACTUAL BACKGROUND .................................................................................3

    A.    The Security Incident ..................................................................................3

    B.    Procedural History ......................................................................................4

    C.    Settlement Negotiations ..............................................................................6

IV.   THE SETTLEMENT ..............................................................................................7

    A.    The Settlement Class ...................................................................................7

    B.    Settlement Benefits .....................................................................................7

        1.    State-of-the-Art Credit and Identity Monitoring.............................7

        2.    Monetary Reimbursement ...............................................................8

        3.    Injunctive Relief & Business Practice Commitments......................9

            a.    Information Security Practice Changes ...............................9

            b.    Information Security Monetary Spend............................. 11

        4.    Additional Relief ........................................................................... 11

    C.    Notice, Opting Out, and Release Provisions ............................................ 12

V.    ARGUMENT ....................................................................................................... 14

    A.    The Court Should Conditionally Certify the Settlement Class ................ 14

    B.    The Rule 23(a) Requirements Are Met..................................................... 15

        1.    Numerosity .................................................................................... 15

        2.    Commonality and Predominance ................................................... 15

        3.    Typicality and Adequacy ............................................................... 17

        4.    Superiority..................................................................................... 18

    C.    Plaintiffs Have Amply Satisfied the Requirements of Rule 23(b)........... 19

    D.    The Court Should Preliminarily Approve the Settlement ........................ 20

i

1.     The Settlement is Sufficiently Fair, Reasonable, and Adequate... 21

2.     The Settlement Satisfies Rule 23(e)'s Requirements.................... 22

a.     Settlement Value to the Class .............................................. 23

b.     Risks of Moving Forward without Settlement.................. 25

3.     The Ninth Circuit Approval Factors ............................................. 29

E.     The Proposed Notice Plan Should Be Approved ...................................... 32

F.     Appointment of Settlement Class Counsel & Class Representatives ...... 34

G.     Settlement Deadlines............................................................................... 35

VI.    CONCLUSION ................................................................................................. 35

1

## TABLE OF AUTHORITIES

2  *CASES*

3  *Altamirano v. Shaw Indus., Inc.,*

4      *2015 WL 4512372 (N.D. Cal. July 24, 2015)*.........................................28

5  *Amchem Prods., Inc. v. Windsor,*

6      *521 U.S. 591 (1997)* ...............................................................14, 19

7  *Amgen, Inc. v. Conn. Ret. Plans & Trust Funds,*

8      *568 U.S. 455 (2013)* ..................................................................16

9  *Bobbit v. Milberg LLP,*

10      *801 F.3d 1066 (9th Cir. 2015)*...................................................17

11  *Briseno v. ConAgra Foods, Inc.,*

12      *844 F.3d 1121 (9th Cir. 2017)*...................................................19

13  *Chun-Hoon v. McKee Foods Corp.,*

14      *716 F. Supp. 2d 848 (N.D. Cal. 2010)* ......................................22

15  *Churchill Vill., LLC v. Gen. Elec.,*

16      *361 F.3d 566 (9th Cir. 2004)*....................................................21

17  *Class Plaintiffs v. City of Seattle,*

18      *955 F.2d 1268 (9th Cir. 1992)*............................................14, 21

19  *Eisen v. Carlisle & Jacquelin,*

20      *417 U.S. 156 (1974)* ..................................................................33

21  *Ellis v. Costco Wholesale Corp.,*

22      *657 F.3d 970 (9th Cir. 2011)*....................................................15

23  *G. F. v. Contra Costa Cty.,*

24      *2015 WL 4606078 (N.D. Cal. July 30, 2015)*...........................22

25  *Galvan v. KDI Distribution Inc.,*

26      *2011 WL 5116585 (C.D. Cal. Oct. 25, 2011)*...........................16

27

28

iii

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ................................................................ *passim*

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992) ................................................................... 17

*Hammond v. The Bank of N.Y. Mellon Corp.*,
    2010 WL 2643307 (S.D.N.Y. June 25, 2010) ...................................... 25

*Hesse v. Sprint Corp.*,
    598 F.3d 581 (9th Cir. 2010) ................................................................... 32

*In re Anthem, Inc. Data Breach Litig.*,
    327 F.R.D. 299 (N.D. Cal. 2018) .............................................. 20, 30, 31

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ............................................................ 21, 29

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015) ................................................................... 28

*In re Emulex Corp. Sec. Litig.*,
    210 F.R.D. 717 (C.D. Cal. 2002) ........................................................... 18

*In re Equifax, Inc. Customer Data Security Breach Litigation*,
    *Case No.*: 1:17-md-2800-TWT (N.D. Ga.) ........................................... 33

*In re Experian Data Breach Litig.*,
    No. 8:15-cv-01592-AG-DFM (C.D. Cal. May 10, 2019) ...................... 24

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
    293 F.R.D. 21 (D. Me. 2013) .................................................................. 25

*In re LinkedIn User Privacy Litig.*,
    309 F.R.D. 573 (N.D. Cal. 2015) .................................................... 20, 30

*In re NVIDIA Corp. Derivative Litig.*,
    2008 WL 5382544 (N.D. Cal. Dec. 22, 2008) ...................................... 14

*In re Omnivision Techs., Inc.*,

    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................................................ 32

*In re Pacific Enters. Sec. Litig.*,

    47 F.3d 373 (9th Cir. 1995).................................................................................. 21

*In re Premera Blue Cross Customer Data Sec. Breach Litig.*,

    No. 3:15-md-2633-SI (D. Or. May 30, 2019) ...................................................... 31

*In re Premera Blue Cross Customer Data Sec. Breach Litig.*,

    2019 WL 3410382 (D. Or. July 29, 2019) .................................................... 30, 31

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,

    962 F. Supp. 450, 496 (D.N.J. 1997). ................................................................ 33

*In re Tableware Antitrust Litig.*,

    484 F. Supp. 2d 1078 (N.D. Cal. 2007) .............................................................. 30

*In re Target Corp. Customer Data Sec. Breach Litig.*,

    892 F.3d 968 (8th Cir. 2018).............................................................................. 24

*In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*,

    No. 1:14-md-02583-TWT (N.D. Ga. Mar. 7, 2016) ............................................ 30

*In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*,

    2016 WL 6902351 (N.D. Ga. Aug. 23, 2016)................................................ 24, 31

*In re TJX Cos. Retail Sec. Breach Litig.*,

    246 F.R.D. 389 (D. Mass. 2007) ........................................................................ 25

*In re Wells Fargo Home Mortg. Overtime Pay Litig.*,

    571 F.3d 953 (9th Cir. 2009).............................................................................. 16

*Johansson-Dohrmann v. Cbr Sys., Inc.*,

    2013 WL 3864341 (S.D. Cal. July 24, 2013)...................................................... 24

*Just Film, Inc. v. Buono*,

    847 F.3d 1108 (9th Cir. 2017)............................................................................ 20

*Linney v. Cellular Alaska P'ship*,

     151 F.3d 1234 (9th Cir. 1998) ........................................................................ 25, 29

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,

     244 F.3d 1152 (9th Cir. 2001) .................................................................................... 19

*Milberg LLP v. Laber*,

     137 S. Ct. 2262, 198 L. Ed. 2d 697 (2017) ............................................................. 17

*Nat'l Rural Telcomms. Coop. v. DIRECTV, Inc.*,

     221 F.R.D. 523 (C.D. Cal. 2004) .............................................................................. 32

*Oda v. DeMarini Sports, Inc.*,

     No. 8:15-cv-2131-JLS-JCGx (C.D. Cal. June 6, 2018) .......................................... 23

*Officers for Justice v. Civil Serv. Comm'n*,

     688 F.2d 615 (9th Cir. 1982) ............................................................................... 21, 26

*Reynoso v. S. County Concepts*,

     2007 WL 4592119 (C.D. Cal. Oct. 15, 2007) .......................................................... 15

*Rhom v. Thumbtack, Inc.*,

     2017 WL 4642409 (N.D. Cal. Oct. 17, 2017) .......................................................... 28

*Rodriguez v. West Publ'g Corp.*,

     563 F.3d 948 (9th Cir. 2009) ....................................................................... 14, 21, 33

*Schuchard v. Law Office of Rory W. Clark*,

     2016 WL 232435 (N.D. Cal. Jan. 20, 2016) ........................................................... 30

*Smith v. Triad of Alabama, LLC*,

     2017 WL 1044692 (M.D. Ala. Mar. 17, 2017) ........................................................ 25

*Staton v. Boeing Co.*,

     327 F.3d 938 (9th Cir. 2003) .................................................................................... 18

*Tyson Foods, Inc. v. Bouaphakeo*,

     136 S. Ct. 1036 (2016) .............................................................................................. 20

*United States v. Armour & Co.*,

    402 U.S. 673 (1971) ............................................................................. 26

*United States v. McInnes*,

    556 F.2d 436 (9th Cir. 1977) ............................................................... 29

*Valentino v. Carter-Wallace, Inc.*,

    97 F.3d 1227 (9th Cir. 1996) ............................................................... 20

*Van Bronkhorst v. Safeco Corp.*,

    529 F.2d 943 (9th Cir. 1976) .......................................................... 21, 29

*Vinole v. Countrywide Home Loans, Inc.*,

    571 F.3d 935 (9th Cir. 2009) ............................................................... 20

*Wal-Mart Stores, Inc. v. Dukes*,

    564 U.S. 338 (2011) ............................................................... 15, 16, 17

*Wiener v. Dannon Co.*,

    255 F.R.D. 658 (C.D. Cal. 2009) ........................................... 15, 17, 19

*Williams v. Vukovich*,

    720 F.2d 909 (6th Cir. 1983) ............................................................... 20

*Wolin v. Jaguar Land Rover N. Am., LLC*,

    617 F.3d 1168 (9th Cir. 2010) ............................................................. 20

*Wright v. Linkus Enters., Inc.*,

    259 F.R.D. 468 (E.D. Cal. 2009) ........................................................ 14

*Zinser v. Accufix Research Inst., Inc.*,

    253 F.3d 1180 (9th Cir. 2001) ............................................................. 18

*RULES*

Fed. R. Civ. P. 23(a) ................................................................................. 15

Fed. R. Civ. P. 23(a)(1) ............................................................................. 15

Fed. R. Civ. P. 23(a)(2) ............................................................................. 15

Fed. R. Civ. P. 23(a)(3) .......................................................................... 17

Fed. R. Civ. P. 23(b)(3) ............................................................... 17, 18, 19

Fed. R. Civ. P. 23(c)(2)(B) ................................................................ 32, 33

Fed. R. Civ. P. 23(e)(1) .................................................................... 22, 32

Fed. R. Civ. P. 23(e)(2) .......................................................................... 29

Fed. R. Civ. P. 23(e)(2)(C)(iii) ............................................................. 27

Fed. R. Civ. P. 23(e)(2)(C)(iv) ............................................................. 28

Fed. R. Civ. P. 23(e)(2)(D) .................................................................... 27

Fed. R. Civ. P. 23(e)(3) .......................................................................... 28

Fed. R. Civ. P. 23(g)(1)(B) .................................................................... 34

Fed. R. Civ. P. 23(g)(1)(A)(i-iv) ........................................................... 34

*OTHER AUTHORITIES*

4 Herbert B. Newberg & Alba Conte,

    *Newberg on Class Actions*, §11.25 (4th ed. 2002) ................................ 21

4 Herbert B. Newberg & Alba Conte

    *Newberg on Class Actions*, §11.41 .............................................. 21, 22

Bolch Judicial Institute, *Guidelines and Best Practices Implementing 2018 Amendments to Rule 23 Class Action Settlement Provisions,* Duke Law School (August 2018) .............. 23

David F. Herr, *Annotated Manual for Complex Litigation* §21.632 (4th ed. 2008) ......... 21

*Manual for Complex Litigation*, Third § 30.41 (1995) ...................................... 22

*Manual for Complex Litigation,* Fourth § 21.63 (2004) ................................... 14

I.      INTRODUCTION

Plaintiffs seek preliminary approval of a settlement agreement providing substantial monetary and injunctive relief to all 2.9 million individuals who Defendant Banner Heath ("Banner") notified in connection with a 2016 data breach of its information systems (the "Breach").[1] As detailed below, the Settlement provides actual, significant relief to those Settlement Class members in the form of, among other things, (i) a two-year subscription to a top-of-the-line credit monitoring and identity-protection service, (ii) a comprehensive and straightforward claim process, including reimbursement of Ordinary Expenses of up to $500 per Settlement Class member and of Extraordinary Expenses of up to $10,000 per Settlement Class member, with an overall cap on reimbursement claims of $6,000,000, and (iii) Banner's multiple, detailed commitments to improving its information security systems, including its commitments to a three-year information security auditing and testing campaign, to continue its three-year, ███ ███ campaign to improve its information security environment, as well as multiple other obligations to maintain and improve its information protection systems. As part of the Settlement, Banner will separately pay all costs of notice and administration, Plaintiffs' counsels' fees and costs as awarded by the Court not to exceed $2,900,000, and incentive awards not to exceed $5,000 for each of the six-named Class Representatives.

The Settlement comes more than three years after the first complaints were filed, and after over two-and-a-half years of motion practice, including two rounds of motions to dismiss, and extensive discovery.  It further represents the result of over ten months of arm's-length, informed, non-collusive negotiations between Banner and Plaintiffs and their counsel, including three separate mediation settings with two different mediators.

---

[1] Unless otherwise noted, all capitalized terms are defined in the Settlement Agreement, which is attached as Exhibit 1 to the Declaration of Andrew S. Friedman in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("Friedman Decl."), being filed concurrently herewith, and referred to hereafter as "Settlement."

1

1    Given the Settlement's many strengths, and in light of the real uncertainties associated

2    with continued litigation, the Court should grant this unopposed motion to begin the

3    settlement-approval process.

4    **II.    SUMMARY OF ARGUMENT**

5        First, it is reasonable and appropriate to conditionally certify for purposes of

6    settlement a class of the approximately 2.9 million individuals affected by the Breach.

7    The proposed class is numerous; questions common to all Settlement Class members—

8    including the adequacy of Banner's network security—are answerable through common

9    proof (commonality); the basic harm Plaintiffs endured—the exfiltration of their

10   personally identifying information, their personal healthcare information, or their

11   payment card information—is identical to the harm suffered by the class (typicality); and

12   Plaintiffs and class counsel will continue to prosecute this litigation on behalf of the

13   settlement class, as they have to date (adequacy).

14       Common questions also predominate. Plaintiffs allege Banner engaged in a course

15   of conduct applicable to all Settlement Class members, including the core allegations that

16   it failed to adequately evaluate and remediate known security deficiencies in its

17   information network. The proposed Settlement Class remains sufficiently cohesive to

18   warrant adjudication by representation.

19       Moreover, class adjudication is superior considering both the high costs of

20   litigating these complex, expert-intensive claims, which would be overwhelming on an

21   individual basis, as well as the practicalities and efficiencies of litigating one

22   consolidated action as opposed to millions of individual claims.

23       Second, the proposed Settlement provides fair, reasonable, and adequate relief. It

24   is the product of informed, non-collusive negotiations, including three mediations, all

25   after considerable motion practice and discovery. It does not grant preferential treatment

26   to representatives of segments of the proposed class. It falls within the reasonable range

27

28

of possible approval. And it has no obvious deficiencies. Preliminary approval is appropriate (and final approval likely).

Third, the proposed content and method of notice is straightforward and improves on the notice and claims processes in other data-breach class-action settlements. Notice will be disseminated by first class mail, at Banner's expense, to all approximately 2.9 million Settlement Class members. A settlement website will provide additional instructions, include links to both the short and long-form notices (in English and Spanish), and allow online access to enroll in the offered identity and credit monitoring.

## III. FACTUAL BACKGROUND

### A. The Security Incident

Banner is one of the largest, nonprofit healthcare systems in the country, generating approximately $7 billion in annual revenue through health services and insurance plans in six states. For all times relevant to this litigation, Banner, as a matter of course, collected and maintained from its patients millions of electronic health and insurance records and significant personally identifying information ("PII") (including Social Security numbers, names, addresses, birth dates, tax and financial information, and health insurance information), other personal healthcare information ("PHI"), the personal and professional information about its over 50,000 employees, including healthcare providers, and credit card and debit card numbers (with expiration dates) ("PCI") from customers of its facilities' food and beverage outlets.

Plaintiffs allege that, in June 2016, financially-motivated cyber-criminals entered Banner's network, rummaged through Banner's information systems, downloaded and installed hacking software, and copied and exfiltrated massive quantities of PII, PHI, and PCI belonging to approximately 2.9 million people, including names, addresses, Social Security numbers, birthdates, medical and pharmaceutical histories for patients, sensitive information of Banner healthcare providers (including their provider numbers and DEA numbers), as well as credit card numbers and debit card numbers for about 30,000 food

and beverage customers (defined in the parties' Settlement as the "Security Incident").

The Security Incident was the largest healthcare data breach of 2016 and the ninth largest

healthcare data breach of all time.[2] The Security Incident exposed Banner patients,

insureds, providers, and payment card users to a significantly increased risk of suffering

devastating and expensive financial and medical identity theft.

Fraud began shortly after the Security Incident: Plaintiff Halpin had fraudulent

bank accounts opened and tax returns filed in her name, and criminals attempted to use

Plaintiff Kim Maryniak's credit accounts. Other incidents of Settlement Class member

identity theft occurred including: fraudulent bank accounts opened in their names;

unauthorized applications for credit at various retailers, including Kohl's, Sunglass Hut,

and Guitar Center; issuance of credit cards for which Settlement Class members did not

apply; opening PayPal accounts; the purchase of real estate using a Settlement Class

member's credit; the filing of fraudulent tax returns; as well as other credit being opened

in the names of Settlement Class members. The risk of fraud, including financial fraud

and medical identity theft, remains ongoing.

## B.   Procedural History

Banner made a public announcement concerning the Security Incident on August

3, 2016.  Shortly thereafter, multiple putative class-action lawsuits were filed against

Banner over the attack.  In all, eleven lawsuits were filed. *See* Friedman Decl., ¶ 3. Judge

Susan Bolton consolidated these cases in late 2016, and recaptioned the case as *In re*

*Banner Health Data Breach Litigation*. *Id.* Judge Bolton appointed Interim Co-Lead

Class Counsel and an Executive Committee to lead counsel to represent the putative

class. *Id.*

On April 6, 2017, six named plaintiffs filed a master consolidated amended class

action complaint ("FCC") in the consolidated proceeding, asserting against Banner seven

causes of action: (1) Negligence, (2) Negligence Per Se, (3) Breach of Contract, (4)

---

[2] *See* https://www.hipaajournal.com/largest-healthcare-data-breaches-of-2016-8631/, last
visited December 5, 2019.

1  Breach of the Implied Covenant of Good Faith and Fair Dealing, (5) Breach of the

2  Implied Duty to Perform with Reasonable Care, (6) Unjust Enrichment, and (7) Violation

3  of the Arizona Consumer Fraud Act ("ACFA"). [Doc. 71.]

4      Banner moved to dismiss the FCC in April 2017, and on December 20, 2017, the

5  Court granted in part and denied in part Banner's Motion to Dismiss. [Doc. 106.] The

6  Court denied Banner's Motion to Dismiss as to Plaintiffs' claims for Negligence,

7  Negligence Per Se, Unjust Enrichment, and violation of the ACFA, but granted it with

8  respect to Plaintiffs' claims for breach of contract, breach of the implied covenant of

9  good faith and fair dealing, and breach of the implied duty to perform with reasonable

10  care.

11      On January 16, 2018, Plaintiffs filed their Second Consolidated Amended Class

12  Action Complaint ("SAC"), asserting additional claims for breach of implied-in-fact

13  contractual term and promissory estoppel on behalf of potentially affected patients,

14  insurance-plan, and employee plaintiffs. [Doc. 114 Sealed, Doc. 115 Redacted.]

15      On February 15, 2018, Banner filed its second motion to dismiss, seeking

16  dismissal of these new claims for failure to state a claim.  On August 7, 2018, the Court

17  dismissed Plaintiffs' promissory-estoppel claim as well as their implied-in-fact contract

18  claims with respect to the patient and insurance-plan Plaintiffs, allowing only the

19  implied-contract claims of the employee Plaintiffs to proceed. [Doc. 133.] Today,

20  Plaintiffs maintain claims for: (1) Unjust Enrichment, (2) violations of the ACFA, (3)

21  Negligence, (4) Negligence Per Se, and (5) Breach of Implied Contract with respect to

22  only a subclass of Banner employees.

23      On September 7, 2018, Banner filed Defendant's Answer to Plaintiffs' SAC,

24  denying Plaintiffs' claims and asserting numerous affirmative defenses. [Doc. 143.]

25      The Parties have since engaged in substantial voluntary and formal discovery,

26  including but not limited to the following: (a) Plaintiffs propounded, and Banner

27  responded to, written discovery, including twenty-three (23) interrogatories and fifty-

28

seven (57) formal requests for document production, (b) Banner propounded, and the named Plaintiffs responded to, written discovery, (c) Plaintiffs deposed one of Banner's 30(b)(6) witnesses, (d) Banner deposed four of the named Plaintiffs, (e) Plaintiffs served and processed three document subpoenas to Verizon, Mandiant, and Deloitte, (f) the parties negotiated key search terms to reduce Banner's email production from more than 2 million files to approximately 800,000 records through the use of Technology Assisted Review ("TAR"), and completed their respective coding of 500 records for the training of the computer algorithm for the agreed-upon TAR process, and (g) Banner made productions of discrete records that do not require the use of TAR or other relevance-review prior to production.

The Parties also agreed on a schedule for the depositions of five additional Banner 30(b)(6) designees in November 2018 through January 2019, which were subsequently postponed so that the Parties could focus their efforts on settlement negotiations. On January 22, 2019, the Parties filed their Joint Motion to Stay Case and Amend Case Management Order No. 1 [Doc. 49] [Doc. 151], which was granted on January 24, 2019, staying all deadlines in the case. [Doc. 152.]

### C.   Settlement Negotiations

Between December of 2018 and August 7, 2019, the Parties engaged in extended and extensive settlement negotiations, including three formal mediations and an in-person meeting of counsel, including an interview with Banner's Chief Information Security Officer ("CISO"), as well as exchanging numerous emails and holding multiple telephone conferences leading up to and in between each mediation.

On December 11, 2018, the Parties attended private mediation with the Hon. Judge Jay C. Gandhi (Ret.) and continued direct settlement negotiations thereafter. Friedman Decl., ¶ 9. On January 23, 2019, the Parties attended a second mediation with Phoenix-based mediator, Craig Phillips, and again continued settlement negotiations thereafter. As part of these negotiations, Plaintiffs' counsel and their cybersecurity expert

met with Banner's counsel and interviewed Banner's CISO on April 9, 2019. *Id.* And on August 7, 2019, the Parties attended a third mediation at which they reached agreement on all terms of the settlement in principle, including agreement on the attorneys' fees portion of the settlement, which had not previously been negotiated. *Id.*

After coming to an agreement in principle, the Parties finalized the terms of the Settlement now before the Court for preliminary approval. *Id.*, ¶¶ 9-10.

## IV.    THE SETTLEMENT

### A.    The Settlement Class

Under the terms of the Settlement, the Settling Parties agreed to certification of the following Settlement Class for settlement purposes only: "All persons who were notified by Banner that their Personal Information may have been compromised as a result of the Security Incident." *See id.* at Friedman Decl., Exhibit 1. Excluded from the Settlement Class are the officers and directors of Banner during the Class Period and those persons or entities that timely and validly request exclusion from the Settlement Class.

### B.    Settlement Benefits

In exchange for a release of Settlement Class members' claims against Banner, the Settlement provides the following benefits:

#### 1.    State-of-the-Art Credit and Identity Monitoring

Settlement Class members will automatically be entitled to two (2) additional years of credit monitoring and identity protection services provided by Identity Guard Total and powered by IBM Watson.  The credit monitoring will include at least the following, or similar, services:

- Up to $1 Million Dollars reimbursement insurance from AIG covering losses due to identity theft and stolen funds;

- Three-bureau credit monitoring providing notice of certain changes to the enrolled Settlement Class member's credit profile, including two-credit bureau inquiry alerts in real-time;

- Real time authentication alerts in as little as three seconds when someone attempts to make a change to enrolled Settlement Class members' personal account information within Identity Guard's network;

- Alerts based on searches of payday-loan providers and court records as well as monitoring of the top ten largest U.S. financial institutions for attempted or actual fraudulent use of the enrolled Settlement Class members' information;

- Online income tax filing alerts provided by LexisNexis and Turbo Tax;

- Dark Web Monitoring that will provide notification if an enrolled Settlement Class member's information such as Social Security number, credit card numbers, financial account numbers, and health insurance numbers are found on the Dark Web;

- Threat Alerts powered by IBM "Watson" providing proactive alerts about potential threats relevant to the enrolled Settlement Class members found by IBM Watson's artificial intelligence, for instance: breaches, phishing scams, and malware vulnerabilities;

- Customer support and victim assistance provided by Identity Guard; and,

- Safe browsing software to help protect the enrolled Settlement Class member's computer(s) against malicious content.

### 2. Monetary Reimbursement

Banner will pay valid claims for Ordinary Expenses, including actual time lost and certain out-of-pocket expenses, incurred after June 17, 2016, as a result of the Security Incident up to a limit of $500 per class member. Reimbursement for ordinary time lost is for up to three (3) hours of lost time compensated at $15.00 per hour upon attestation that time was spent as a result of the Security Incident.

Banner will also pay claims for Extraordinary Costs, including certain extraordinary out-of-pocket expenses and extraordinary additional time lost responding to identity theft or fraud, up to a limit of $10,000 per class member. Payment for extraordinary compensable additional lost time shall be at the rate of $15.00 per hour unless the Settlement Class member establishes through documented proof that he or she took unpaid time off work and the Settlement Class member's actual standard

compensation rate exceeds $15.00 per hour, in which case payment shall be at the rate of actual compensation up to a maximum of $40.00 per hour.[3]

### 3.   Injunctive Relief & Business Practice Commitments

The proposed Settlement provides several different forms of injunctive relief in the form of extensive improvements to Banner's information security and business practice changes, which include requirements that Banner continue to follow new information-security practices that Banner put in place after the Security Incident and during the course of the litigation and that Banner implement additional practices that will be put in place and maintained in the future—all to address Banner's network security prior to the Breach. Further, Banner has agreed to spend ███████ in information security during the three years following the Breach and to maintain a minimum amount of IT spend for the three years following the Settlement.

#### a.   Information Security Practice Changes

Banner has agreed that it has and will implement the following security improvements and business-practice changes following the Security Incident and will continue those practices for three years after the Settlement, including but not limited to: (i) the on-boarding of a CISO to lead information security program improvement efforts, and the addition of fifty-eight full-time employees to Banner's Information Security Department, including a 13-person leadership team and three full-time employees dedicated to information security audit and assessment support; (ii) engagement of a reputable professional services firm to objectively evaluate Banner's information-security program to determine the maturity of its security function capabilities and to recommend a three-year road map for significant investment and improvements; (iii) ████████████ ████████████████████████████████████████████████████████

---

[3] Total payments under the Settlement for Ordinary Expenses and Extraordinary Expenses shall not exceed $6,000,000 (the "Claims Made Settlement Cap"). If valid claims submitted for Ordinary Expenses and Extraordinary Expenses, on or before the Claims Deadline, exceed the Claims Made Settlement Cap, all such claims shall be reduced on a pro rata basis prior to payment.

9

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



; (iv) implementation of enhanced information security processes; (v)

1 ██████████████████████████████████████

2 ████████████████████████████████████████████

3 █████████████████████████████████████████████

4 ████████████████████████████████████████

5 ████████████████████████████████████████████

6 ██████████████████████████████████████████████

7 ████████████████████████████████████████████████

8 ████████████████████████████████████████████

9 ███████████████████, all as more fully described in Exhibit C to the Settlement.

                b.      <u>Information Security Monetary Spend</u>

Banner has also agreed to continue and complete the increase to its Information Security budget.  First, it has agreed to continue and to complete a ████████████ project to improve its information security systems in response to the Breach.

Second, for a period of three years following the Settlement, Banner has agreed to maintain a spend of ████████ of its overall IT budget to invest in and maintain leading practice information security solutions.

Class Counsel have significant experience negotiating business practice changes in data breach litigation and believe these improvements provide substantial benefits for the Settlement Class members, whose data is still held in Banner's systems.

        **4.**     **Additional Relief**

In addition to the individual monetary relief, the credit monitoring and identity protection services, and the business practice commitments, the proposed Settlement provides the following relief to be paid by Banner:

•     Payment for Notice and for Settlement Administration, including the cost of implementing and developing a notice plan, as well as the costs of a settlement administrator to disseminate notice, administer the Settlement, and evaluate and pay clams.

- Service Awards for Proposed Settlement Class Representative Plaintiffs. In this respect, Banner has agreed to, and proposed Class Counsel may apply to the Court for, Service Awards of up to $5,000 to each proposed Class Representative Plaintiff for his or her time, effort, and risk in connection with the litigation, including stepping forward to represent the proposed Class, searching for and producing data, and preparing for and sitting for their depositions. These Service Awards are not conditioned on the Plaintiffs' support of the proposed Settlement. Class Counsel negotiated the amount of Service Awards to be applied for independently from the other terms of the proposed Settlement, and the Court should consider the Service Awards separately from its consideration and determination of the fairness, reasonableness, and adequacy of the proposed Settlement.

- Under the proposed Settlement, and subject to Court approval, Banner has agreed to pay an award of attorneys' fees and costs to Class Counsel up to $2,900,000. The Parties negotiated and agreed upon the amount of attorneys' fees, costs, and expenses under the supervision of mediator Craig Phillips after all monetary and injunctive relief terms of the proposed Settlement had been agreed upon. Prior to the Final Fairness Hearing, Class Counsel will submit a request to the Court of their attorneys' fees, reasonable costs, and expenses in an amount up to $2,900,000. As that motion will make clear, the amount sought is reasonable as a percentage of the fund and is commensurate with the lodestar attorneys' fees plus expenses incurred in this matter. Banner has agreed that it will not object, appeal, or otherwise comment upon any such attorneys' fees and expense request.

### C. Notice, Opting Out, and Release Provisions

Subject to the requirements of any orders entered by the Court, dissemination of the Notice shall be accomplished by the Claims Administrator as follows:

No later than thirty (30) days after entry of the Preliminary Approval Order, Banner shall provide the Claims Administrator with the name and physical address of

each Settlement Class member (collectively, "Class Member Information") that Banner possesses and updated in connection with the incident response. Within thirty (30) days of receiving the Class Member Information, the Claims Administrator will commence the dissemination of the Notice. Notice will be given by U.S. mail to all Settlement Class members with postage prepaid by Banner. Notice will be in the form of a double-sided postcard that provides instructions on how to enroll in the credit monitoring and to make claims for Settlement Class benefits, including directing Settlement Class members to the Settlement Website, providing a telephone number they can call to enroll in the Settlement Class benefits, and providing notice that everyone has sixty (60) days to object to or opt out of the Settlement.

Prior to the dissemination of the Notice, a settlement information website will be created. The website will be dedicated to providing information related to the Security Incident and the Settlement, and will allow Settlement Class members to enroll in the credit-monitoring program and to submit claims for monetary benefits. The website will make clear that Settlement Class members who have opted-out of the Settlement in accordance with Court-approved deadlines and procedures have not released any claims they may have related to the Security Incident and may still file claims related to allegations in the Complaint; it will also provide notice that there is a statute of limitations for filing claims and inform individuals that their claims may have been tolled but that the Parties are not providing legal advice and that they should contact an attorney immediately if they believe they have a claim.

Settlement Class members shall receive twelve (12) months to enroll in the credit monitoring and make claims for Class benefits. Settlement Class members will have sixty (60) days after Notice is sent to opt-out of the Settlement. The Settlement also provides that Banner may terminate the Settlement, if more than 500 affected persons opt out of the Settlement Class.

1    Once the Settlement becomes final, Plaintiffs and Settlement Class members will

2    release and discharge Banner from any and all claims and causes of action that arise in

3    any way from the Actions or Security Incident against Banner (other than claims to

4    enforce the Settlement).

5    **V.    ARGUMENT**

6    "[S]trong judicial policy…favors settlement[], particularly where complex class

7    action litigation is concerned." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276

8    (9th Cir. 1992). Settlements are particularly favored "in class actions and other complex

9    cases where substantial judicial resources can be conserved by avoiding formal

10   litigation." *In re NVIDIA Corp. Derivative Litig.*, No. C-06-06110-SBA (JCS), 2008 WL

11   5382544, at *2 (N.D. Cal. Dec. 22, 2008) (quotation marks omitted); *accord, Rodriguez*

12   *v. West Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009).

13   Approval of class action settlements normally proceeds in two stages: (1)

14   preliminary approval followed by notice to the class, and then (2) final approval. Federal

15   Judicial Center, *Manual for Complex Litigation,* Fourth § 21.63 (2004). For the reasons

16   that follow, the Court should conditionally certify the class and preliminarily approve the

17   settlement.

18   **A.    The Court Should Conditionally Certify the Settlement Class**

19   When presented with a proposed settlement, a court must first determine whether

20   the proposed settlement class satisfies the requirements for class certification under

21   Federal Rule of Civil Procedure 23. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th

22   Cir. 1998). However, where a court is evaluating the certification question in the context

23   of a proposed settlement class, questions regarding the manageability of the case for trial

24   purposes are not considered. *Wright v. Linkus Enters., Inc.*, 259 F.R.D. 468, 474 (E.D.

25   Cal. 2009) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). Here, the

26   provisional certification of the Settlement Class is appropriate for purposes of settlement

27   because all the requirements of Rule 23 have been met.

28

14

### B.   The Rule 23(a) Requirements Are Met

Rule 23(a) enumerates four prerequisites for class certification: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy. Fed. R. Civ. P. 23(a); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979-80 (9th Cir. 2011).

#### 1.   Numerosity

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a); *Wiener v. Dannon Co.*, 255 F.R.D. 658, 664 (C.D. Cal. 2009). Numerosity under Fed. R. Civ. P. 23(a)(1) is readily satisfied as Banner has identified approximately 2.9 million individuals affected by the Security Incident.[4] *See Reynoso v. S. County Concepts*, No. SACV07-373-JVS(RCx), 2007 WL 4592119, at *2 (C.D. Cal. Oct. 15, 2007).

#### 2.   Commonality and Predominance

Commonality exists if there are questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). The common legal or factual contention underlying the claims "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Here, the claims of the Class members all rise or fall based on Banner's actions and omissions leading up to the Security Incident. "What matters to class certification ... is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common ***answers*** apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350 (emphasis in original). Plaintiffs' claims raise a slew of common issues with common answers, including but not limited to the following:

---

[4] Plaintiffs in their SAC pled the Security Incident affected approximately 3.7 million persons. *See e.g.* SAC, ¶ 241. Banner's 30(b)(6) representative testified, however, that after duplicate records were removed, the total number affected was approximately 2.9 million.

- • Whether Banner was duty-bound to safeguard Plaintiffs' and the Settlement Class members' PII, PHI, and PCI;

- • Whether Banner breached its obligation to safeguard Plaintiffs' and the Settlement Class members' PII, PHI, and PCI;

- • Whether Banner's alleged failures to safeguard Plaintiffs' and the Settlement Class members' PII, PHI, and PCI led to Security Incident; and

- • Whether Banner's alleged inadequate information security practices damaged Plaintiffs and the Settlement Class members.

The resolution of these issues revolves around common evidence that does not vary from Class member to Class member, and so can be fairly resolved—whether through litigation or settlement—for all Class members at once.

"There is no definitive test for determining whether common issues predominate, however, in general, predominance is met when there exists generalized evidence which proves or disproves an [issue or] element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class members' individual position." *Galvan v. KDI Distribution Inc.*, No. SACV 08-0999-JVS (ANx), 2011 WL 5116585, at *8 (C.D. Cal. Oct. 25, 2011) (internal quotations omitted). The main concern is "the balance between individual and common issues." *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 959 (9th Cir. 2009). Plaintiffs are not required to prove that each element of their claims is "susceptible to classwide proof." *Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 469 (2013) (citation omitted). Rather, the predominance requirement is satisfied when plaintiffs and class members share a common claim that is "capable of classwide resolution," meaning that determination of the claims' "truth or falsity will resolve an issue that is central to [the claims'] validity … in one stroke." *Dukes*, 564 U.S. at 350; *see also Hanlon*, 150 F.3d at 1022.

Common issues predominate. Plaintiffs seek to prove Banner's conduct in maintaining and safeguarding their information (and the information of all Class members) was deficient in a systemic way leading to the Breach, and that Banner's

response to the Security Incident was inadequate. The evidentiary objectives change little whether there are 100 class members or, as here, approximately 2.9 million. In either instance, Plaintiffs would present the same evidence of Banner's cybersecurity policies and practices, of the deficiencies of those policies and practices, and of Banner's alleged response to the Security Incident. In the words of the Supreme Court, these common questions are "central to the validity of each one of the claims" and may be resolved "in one stroke." *Dukes*, 564 U.S. at 350; *see also Hanlon*, 150 F.3d at 1022. These common issues predominate over any potential individual issues, satisfying the predominance requirement. Fed. R. Civ. P. 23(b)(3).[5]

### 3.   Typicality and Adequacy

Proposed class representatives meet the typicality requirement when "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). They need not be "substantially identical." *Hanlon*, 150 F.3d at 1020; *see also Wiener*, 255 F.R.D. at 665. The test for typicality "is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named Plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

Plaintiffs' claims are typical because they, like all members of the proposed Settlement Class, provided PII, PHI, or PCI to Banner in exchange for services or employment. Banner was duty-bound to protect and to keep that information secure. Plaintiffs, like all other members of the proposed Settlement Class, have sustained

---

[5] Unlike cases in which predominance was destroyed by the need to apply differing laws of numerous states, no such insuperable choice of law issues are implicated in this action. Because Banner is headquartered in Arizona, all of its relevant actions and omissions occurred here and an overwhelming majority of class members are Arizona residents, Arizona law governs all issues based on Arizona's "most significant relationship" conflict rules. *Bobbit v. Milberg LLP*, 801 F.3d 1066 (9th Cir. 2015), *cert. granted, judgment vacated sub nom. Milberg LLP v. Laber*, 137 S. Ct. 2262, 198 L. Ed. 2d 697 (2017).

damages as a result of Banner's uniform failure to adequately safeguard that information. The same liability theories apply to the claims of all proposed Settlement Class members.

In the Ninth Circuit, adequacy is satisfied where counsel for the class is qualified and competent to vigorously prosecute the action and the interests of the proposed class representatives are not antagonistic to the interests of the class. *See, e.g.*, *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003); *Hanlon*, 150 F.3d at 1020. Plaintiffs and their proposed Class Counsel have incurred significant costs and risks, have performed extensive work to date in identifying and investigating potential claims in this action, have established the factual basis for the claims sufficient to prepare a detailed consolidated class action complaint, have pursued and reviewed document discovery, have retained and engaged with experts, have successfully overcome two Rule 12(b)(6) dispositive motions, and have negotiated a fundamentally fair and reasonable settlement. *See* Friedman Decl., ¶ 7; *see also In re Emulex Corp. Sec. Litig.*, 210 F.R.D. 717, 720 (C.D. Cal. 2002); *Staton*, 327 F.3d at 957. And considering Plaintiffs and members of the Settlement Class are seeking redress from what is essentially the same alleged injury, there are no disabling conflicts of interest.

### 4.   **Superiority**

Rule 23(b)(3) sets forth factors informing the superiority inquiry, including: (a) the interest of members of the Settlement Class in individually controlling separate actions; (b) the extent and nature of any litigation concerning the controversy already begun by or against members of the Settlement Class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3); *see Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190-92 (9th Cir. 2001). "[C]onsideration of these factors requires the court to focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis." *Id.*, 253 F.3d at 1190 (citation omitted).

1     As to factor (a), there is no indication that any Class members wish to prosecute

2  their claims individually. With respect to (b), eleven putative class action lawsuits based

3  on the same facts were filed against Banner. This Court soundly approved the

4  consolidation of those lawsuits into the instant action, and because the fact of settlement

5  eliminates any potential difficulties in managing the trial of this action as a class action,

6  the final superiority factor—manageability—does not apply. *Amchem Prods., Inc.*, 521

7  U.S. at 620; *see also Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1126 n.5 (9th Cir.

8  2017). And because it is desirable to concentrate the litigation in a single forum (the same

9  District where Banner is headquartered and the Security Incident occurred) to avoid

10  inconsistent adjudications and wasteful duplicative litigation, factor (c) is satisfied. The

11  class action is, in sum, superior, considering the practicalities and efficiencies of

12  litigating one consolidated action as opposed to millions of individual claims.

13  **C.      Plaintiffs Have Amply Satisfied the Requirements of Rule 23(b)**

14     Parties seeking class certification, including of a class for settlement purposes,

15  "must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3)."

16  *Hanlon*, 150 F.3d at 1022. Here, the Settlement Class is maintainable under Rule

17  23(b)(3), which encompasses those cases "in which a class action would achieve

18  economies of time, effort, and expense, and promote . . . uniformity of decision as to

19  persons similarly situated, without sacrificing procedural fairness or bringing about other

20  undesirable results." *Amchem Prods., Inc.*, 521 U.S. at 615; *Wiener*, 255 F.R.D. at 668.

21     There are two fundamental conditions to certification under Rule 23(b)(3): (1)

22  questions of law or fact common to the members of the class predominate over any

23  questions affecting only individual members; and (2) a class action is superior to other

24  available methods. *See Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las

25  Vegas Sands, Inc.*, 244 F.3d 1152, 1162-63 (9th Cir. 2001); *Hanlon*, 150 F.3d at 1022;

26  *Wiener*, 255 F.R.D. at 668.

27

28

As explained above, the requirements of Rule 23(b)(3) are met here as common questions predominate over any questions affecting only individual members and class resolution is superior to other available methods for a fair and efficient resolution of the controversy. Indeed, the main issues in this consolidated case (listed in Section V.B.2 above) can all be resolved using the same evidence for all Settlement Class members, making it the precise type of predominant question best resolved on a class-wide basis. *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016). In contrast, resolution of these main issue through individual actions is impracticable: The amount in dispute for individual class members is too small, the technical issues involved are too complex, and the required expert testimony and document review too costly. *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1123 (9th Cir. 2017). A class action represents the only realistic means through which the almost 2.9 million Settlement Class members may obtain relief. *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996); *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification."); *accord Hanlon*, 150 F.3d at 1023; *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 946 (9th Cir. 2009).

For these reasons, the class device is the superior method for adjudicating Plaintiffs' claims arising from the Security Incident—just as in other data-breach cases where class-wide settlements have been approved. *See e.g.*, *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 315-16 (N.D. Cal. 2018); *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 585 (N.D. Cal. 2015).

### D.     The Court Should Preliminarily Approve the Settlement

Preliminary approval is the prerequisite to giving notice so that members of a class have "a full and fair opportunity to consider the proposed [settlement] and develop a response." *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983). Preliminary approval does not require the Court to answer the ultimate question of whether a tentative

1   settlement is fair, reasonable, and adequate. The Court need only "make a preliminary

2   determination of the fairness, reasonableness and adequacy of the settlement" so that

3   notice of the settlement may be given to the Settlement Class and a fairness hearing may

4   be scheduled to make a final determination regarding the fairness of the settlement. *See* 4

5   Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, §11.25 (4th ed. 2002);

6   David F. Herr, *Annotated Manual for Complex Litigation* ("*Manual*") §21.632 (4th ed.

7   2008). In so doing, the Court reviews the settlement to determine that it is not collusive

8   and, "taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for*

9   *Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *In re Bluetooth*

10  *Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011); *Rodriguez,* 563 F.3d at

11  965.[6]

12      **1.   The Settlement is Sufficiently Fair, Reasonable, and Adequate**

13      Typically, "[t]here is a presumption of fairness when a proposed class settlement,

14  which was negotiated at arm's-length by counsel for the class, is presented for Court

15  approval." *Newberg on Class Actions*, §11.41; *see also Rodriguez*, 563 F.3d at 965 ("We

16  put a good deal of stock in the product of an arms-length, non-collusive, negotiated

17  resolution.").

18      Here, the Settlement was negotiated at arm's-length between Interim Co-Lead

19  Class Counsel and Banner's counsel both directly between the Parties and in consultation

20  with the Honorable Jay C. Gandhi (Ret.) and Mediator Craig Phillips, which took close to

21  a year to complete; it was also subject to confirmatory discovery by Plaintiffs. *See*

22  Friedman Decl., ¶¶ 5-9.

23

24  [6] Settlements of class actions are strongly favored. *Class Plaintiffs,* 955 F.2d at 1276

25  (noting "strong judicial policy that favors settlements, particularly where complex class
    action litigation is concerned"); *see also Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566,

26  576 (9th Cir. 2004); *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). By

27  their very nature, because of the uncertainties of outcome, difficulties of proof, and
    lengthy duration, class actions readily lend themselves to compromise. *Van Bronkhorst v.*

28  *Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).

1    Further, the Parties, represented by experienced class counsel, did not commence

2    discussion of attorneys' fees, costs, and incentive awards until after the parties had

3    reached agreement on all substantive portions of the class resolution, and again, this

4    component of the Settlement was negotiated at arm's-length under the direction of a

5    mediator. *Id.*, ¶ 10; *G. F. v. Contra Costa Cty.*, No. 13-cv-03667-MEJ, 2015 WL

6    4606078, at *13 (N.D. Cal. July 30, 2015) ("[T]he assistance of an experienced mediator

7    in the settlement process confirms that the settlement is non-collusive."); *accord Chun-*

8    *Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010); *Newberg*, at

9    §11.41 ("The initial presumption of fairness of a class settlement may be established by

10   showing: (1) that the settlement has been arrived at by arm's length bargaining; (2) that

11   sufficient discovery has been taken or investigation completed to enable counsel and the

12   court to act intelligently; and (3) that the proponents of the settlement are counsel

13   experienced in similar litigation.").

14   The central issue at this stage is whether the proposed settlement falls within the

15   range of what ultimately might be approved as fair, reasonable, and adequate, so as to

16   justify providing notice to the Class and scheduling a final approval hearing. "If the

17   preliminary evaluation of the proposed settlement does not disclose grounds to doubt its

18   fairness or other obvious deficiencies … and appears to fall within the range of possible

19   approval," the Court should grant preliminary approval and direct notice and schedule a

20   final approval hearing. *Manual for Complex Litigation*, Third § 30.41, at 237 (1995).

21   **2.    The Settlement Satisfies Rule 23(e)'s Requirements**

22   Rule 23(e)(1) provides that notice should be given to the class, and hence,

23   preliminary approval should only be granted, where the Court "will likely be able to"

24   finally approve the settlement under Rule 23(e)(2) and certify the class for settlement

25   purposes. Fed. R. Civ. P. 23(e)(1); *see also id.* Advisory Committee Notes – 2018

26   Amendments. Nonetheless, "[a]t this preliminary stage and because Class Members will

27   receive an opportunity to be heard on the Settlement Agreement, a full fairness analysis is

28

22

unnecessary." *Oda v. DeMarini Sports, Inc.*, No. 8:15-cv-2131-JLS-JCGx (C.D. Cal. June 6, 2018), Dkt. 157 at ECR 14 (citation and quotation marks omitted).

The 2018 amendments to Rule 23 do not change this standard. Despite requiring courts to ask whether a proposed settlement is likely to win final approval, the preliminary approval standard remains "more lenient than the eventual standard required to grant final approval." Bolch Judicial Institute, *Guidelines and Best Practices Implementing 2018 Amendments to Rule 23 Class Action Settlement Provisions*, Duke Law School (August 2018), at *2. Under the recently revised Rule 23(e)(2), the court may approve a settlement on finding that it is fair, reasonable, and adequate after consideration of the Rules factors that are discussed, in turn, below.

**Adequate Representation**. As discussed in detail in Section V.B.3, above, Plaintiffs and proposed Class Counsel have vigorously and adequately represented the Class—prosecuting the claims against Banner and working tirelessly to gather the documents and information necessary to properly evaluate the case, to prepare for trial, and then to negotiate a robust settlement that provides significant relief to the Settlement Class. *See* Friedman Decl., ¶ 7.

**Arm's-Length Settlement**. As discussed in Section V.D.1, above, the Settlement was also negotiated at arm's length, over a ten-month period, with the help of seasoned and respected mediators over three separate mediations. *See* Friedman Decl., ¶ 9.

**Reasonable and Adequate Relief in Light of Risks Moving Forward**. As set forth in Section V.D.1 and in additional detail below, the relief provided by the Settlement is reasonable and adequate, particularly in light of the risks and resulting delay of trial and associated appeals.

a.   <u>Settlement Value to the Class</u>

In terms of the proposed class-wide relief, the Settlement provides Settlement Class members with two years of Credit Monitoring and Identity Protection Services

through Identity Guard. The retail value[7] for each proposed Settlement Class member receiving this Credit Monitoring and Identity Protection benefit is $499.92 ($20.83 per month for 24 months). *See* https://www.identityguard.com/plans, last visited December 5, 2019.

Given a class size of approximately 2.9 million individuals, this is an enormous benefit, potentially amounting to millions of dollars of savings to Settlement Class members were they to obtain similar, or even inferior, credit-monitoring products on their own on the open market. Thus, for every 1% of the Settlement Class members who receive this service, the value to the Settlement Class is approximately $14,497,680. A higher response rate means more claimants will receive the Credit Monitoring and Insurance Services, resulting in an increase in the value attributable to that component of the Settlement.

In addition, the improvements that Banner has implemented will provide significant value to all Settlement Class members by securing their PII, PHI, and PCI in Banner's possession using industry-standard systems and protocols. *See In re Target Corp. Customer Data Sec. Breach Litig.*, 892 F.3d 968, 974 n.6 (8th Cir. 2018) ("[T]he injunctive relief [implementation of data security measures] … has value to all class members"). Following the Security Incident and filing of these lawsuits, Banner spent ███████ on improved data security and has committed to spending an additional ███ ████ in the third year following the breach. Further, Banner has committed to specific future improvements and practices to protect the Settlement Class's PII, PHI, and PCI

---

[7] The retail value of these services (rather than the discounted bulk cost) is the proper gauge to apply here, given that this represents the value of the benefit Settlement Class members will actually receive. *See, e.g., Johansson-Dohrmann v. Cbr Sys., Inc.*, No. 12-cv-1115-MMA (BGS), 2013 WL 3864341, at *9 (S.D. Cal. July 24, 2013); *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-md-02583-TWT, 2016 WL 6902351, at *4 (N.D. Ga. Aug. 23, 2016) (granting final approval and reasoning that "[t]hese services have a retail value of approximately $180 per enrollee"); *In re Experian Data Breach Litig.*, No. 8:15-cv-01592-AG-DFM (C.D. Cal. May 10, 2019), Dkt. 322 (final approval order) at 2 (granting fee request justified under percentage method based on retail value of credit monitoring).

and to spend an appropriate percentage of its annual IT budget on information security. Those amounts will be measured in hundreds of millions of dollars all told. Plaintiffs believe that inherent in Banner's decision to spend money on data security is a belief that its customers will benefit by an amount *at least* as much as it spends.

### b.   Risks of Moving Forward without Settlement

Although nearly all class actions involve a high level of risk, expense, and complexity, *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998), data breach cases are especially risky and complex. *See, e.g.*, *Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060(RMB)(RLE), 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting cases).

Chief among these risks are that Banner could successfully prevail in opposing class certification. Courts have reached different decisions on plaintiffs' bids to certify classes in data-breach cases. *Compare In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21, 35 (D. Me. 2013) (denying certification), and *In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. 389, 401 (D. Mass. 2007) (same), with *Smith v. Triad of Alabama, LLC*, No. 1:14-CV-324-WKW, 2017 WL 1044692, at *13 (M.D. Ala. Mar. 17, 2017) (granting certification).[8] Compounding these risks is the reality of the non-static data-breach-specific case law that is currently evolving with differing results; there is no guarantee for either side of the ultimate result. *See In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2018 WL 3960068, at *11 (N.D. Cal. Aug. 17, 2018), ("To begin, data-breach litigation is an actively developing field of the law where much of the legal landscape is still shifting and unsettled.").

Even prior to certification, Plaintiffs would have to overcome Banner's motion for summary judgment, which would likely present issues of causation, damages, and

---

[8] Plaintiffs note that most data-breach actions have resolved prior to contested certification proceedings. While Plaintiffs strongly believe that certification would be appropriate in this case, they are cognizant that the issue remains less than certain and presents them an essentially case-ending risk if they were to proceed and fail to certify a class.

standing. While Plaintiffs believe that they would prevail on these issues, they have already lost certain claims at the pleading stage and, in the absence of settlement, would face the risk of losing some or all of their remaining claims.

And, of course, Plaintiffs would have to prevail at trial. While not insurmountable, those risks exist in the absence of settlement: Plaintiffs have to run a gauntlet, survive, and win at every stage in order to recover.

Last, the cost for Banner and Plaintiffs to maintain the lawsuit would be high given the sheer amount of documentary evidence, and the significant expert costs both parties have already incurred and would incur in the future through expert reports or depositions, or through class certification, summary judgment, and trial. As such, the current Settlement strikes an appropriate balance between the potential benefits, on the one hand, and the risks and costs associated with continued litigation, on the other. *Officers for Justice*, 688 F.2d at 624; *United States v. Armour & Co.*, 402 U.S. 673, 681-82 (1971).

**Claims Process and Proposed Method of Distribution**. In terms of the proposed claims process, the protocol is straightforward and is designed to facilitate the filing of claims. Claimants can complete a claim form on a website or on a paper form; and the case-specific website will answer frequently asked questions through a long-form notice and provides a toll-free telephone number Settlement Class members can call with questions.

Settlement Class members who sign up for the credit-monitoring service will receive an activation code, which they can use to activate the credit-monitoring services up to one year after activation codes are issued or they can sign up at the time they submit their initial claim even before final approval is granted. Monetary relief will be distributed to the Settlement Class via the use of claim forms on which Settlement Class members will identify any Ordinary Expenses and any Extraordinary Expenses they have

incurred and provide the necessary additional information, documentation, verifications, and/or attestations required to obtain reimbursement.[9]

The Settlement Administrator will review claim forms as they are submitted. If approved, payment will be sent; and, if claims submitted by Settlement Class members are deemed deficient, the Settlement Administrator will notify the Settlement Class member, who will then have one opportunity to cure deficient claims.

The Claims Administrator will create a settlement website, establish and maintain a toll-free telephone number, and create a mailing address through which the Settlement Class can obtain information and file claims. The Claims Administrator will distribute monetary relief directly to the Settlement Class members who submit valid claims.

The process for notifying the Class is robust and readily satisfies the dictates of due process. The primary form of direct, individual notice will be via U.S. mail. Friedman Decl., ¶ 15. The method of distributing relief is reasonable and supports preliminary approval.

**Proposed Award of Attorneys' Fees**. Rule 23(e)(2) requires consideration of "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). "Ultimately, any award of attorney's fees must be evaluated under Rule 23(h), and no rigid limits exist for such awards. Nonetheless, the relief actually delivered to the class can be a significant factor in determining the appropriate fee award." Fed. R. Civ. P. 23(e)(2)(D), Advisory Committee Notes – 2018 Amendments.

Under the Settlement, Plaintiffs agreed to cap their request for, and Banner has agreed not to contest, a combined award of $2,900,000 in attorneys' fees and costs. This amount represents a reduction of approximately ten to fifteen percent off Plaintiffs'

---

[9] The claim form and required supporting information recognizes the inherent variability of out-of-pocket damages from the theft of PHI, PII, and PCI, and any resulting identity theft, as well as the need for additional identifying information in order to demonstrate the amount of damages.

27

counsel's calculated lodestar. *See* Friedman Decl., ¶ 10. In addition, the Parties did not negotiate attorneys' fees until after they had agreed upon all substantive elements of the Settlement. *Id.* And last, there is no quick-pay provision in the Settlement for the attorneys' fees award; if approved, they shall be paid within thirty (30) business days of the Effective Date of the Settlement, not before any other element is complete.

**Incentive Awards**. Plaintiffs will seek incentive payments of $5,000 per named Plaintiff. This enhancement is set at the Ninth Circuit's benchmark award for representative plaintiffs. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947-48 (9th Cir. 2015). It is an appropriate enhancement here because the representative Plaintiffs actively participated in the litigation, including answering discovery and sitting for depositions, and because the cumulative awards sought will constitute a small fraction of the total settlement value. *Rhom v. Thumbtack, Inc.*, No. 16-cv-02008- HSG, 2017 WL 4642409, at *8 (N.D. Cal. Oct. 17, 2017) (approving a $5,000 service award).[10]

**Equitable Treatment of Class Members**. The Settlement treats Settlement Class members equitably relative to each other. All Class members are eligible for two years of credit monitoring—a consistent remedy appropriate across the entire Class. However, the Settlement provides for different relief to Class members who have incurred different costs from the Security Incident, allowing specific claims for Ordinary Expenses or Extraordinary Expenses. To the extent Settlement Class members receive different compensation under the Settlement, it will be a product of different losses and proportionate to their actual harms.[11] *See, e.g.*, *Altamirano v. Shaw Indus., Inc.*, No. 13-cv-00939-HSG, 2015 WL 4512372, at *8 (N.D. Cal. July 24, 2015) (finding no

---

[10] The next Rule 23(e)(2) factor requires the Court to evaluate any Rule 23(e)(3) agreements made in connection with the proposed settlement. *See* Fed. R. Civ. P. 23(e)(2)(C)(iv). Here, no Rule 23(e)(3) agreements exist.

[11] For example, only Settlement Class members who have experienced identity theft are eligible for reimbursement for documented professional fees and other costs incurred to address identity fraud or theft, including but not limited to falsified tax returns, new account fraud, existing account fraud, account takeover, and medical-identity theft.

preferential treatment because settlement "compensates class members in a manner generally proportionate to the harm they suffered on account of [the] alleged misconduct").

### 3. The Ninth Circuit Approval Factors

The Ninth Circuit has also articulated eight factors to use in evaluating the fairness of a class-action settlement at the preliminary approval stage:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d at 946. Several of these factors overlap with those in Rule 23(e)(2), and they have not been displaced by the recent amendment to Rule 23(e). Fed. R. Civ. P. 23(e)(2), Advisory Committee Notes–2018 Amendments. For that reason, certain factors previously discussed above will not again be repeated below.

**The Strength of Plaintiffs' Case**. Settlements resolve the inherent uncertainty on the merits, and are therefore strongly favored by the courts, particularly in class actions. *See Van Bronkhorst*, 529 F.2d at 950; *United States v. McInnes*, 556 F.2d 436, 441 (9th Cir. 1977). This action is not unique in this regard—the Parties disagree diametrically about the merits, and there is substantial uncertainty as to the ultimate outcome of this litigation. While Plaintiffs feel that their substantive claims are meritorious, Banner has heavily contested the merits of those claims; and there is at least a possibility that a fact finder could find against Plaintiffs on some or all of their claims. Further, as this case has been litigated for over three years (during which parties have exchanged significant discovery), the litigation has proceeded to the point where "the parties have sufficient information to make an informed decision about settlement," including an informed and realistic assessment of the strengths and weakness of their respective cases. *See Linney*, 151 F.3d at 1239.

**The Value of the Benefits Offered in Settlement**. "To determine whether a settlement 'falls within the range of possible approval,' courts focus on 'substantive fairness and adequacy' and 'consider plaintiffs' expected recovery balanced against the value of the settlement offer.'" *Schuchard v. Law Office of Rory W. Clark*, No. 15-cv-01329-JSC, 2016 WL 232435, at *10 (N.D. Cal. Jan. 20, 2016) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079-80 (N.D. Cal. 2007)). "Immediate receipt of money through settlement, even if lower than what could potentially be achieved through ultimate success on the merits, has value to a class, especially when compared to risky and costly continued litigation." *In re LinkedIn User Privacy Litig.*, 309 F.R.D. at 587.

The relief provided to the Settlement Class is strong. Settlement Class members are entitled to reimbursement of up to $500 each for Ordinary Expenses and up to $10,000 each for Extraordinary Expenses incurred as a result of the Security Incident, subject to a $6,000,000 cap on payment of claims. *Compare In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. at 310 (granting final approval) (noting class members may submit claims up to $10,000 for reimbursement of out-of-pocket costs).

In terms of the specific allowed reimbursable hours and amounts, the relief here meets and in some instances exceeds those provided for in like data breach settlements. For example, under the proposed Settlement, Settlement Class members can submit claims for lost time up to 18 hours: 3 hours of lost time reimbursable at $15 an hour; and, if documented and supported, 15 hours of additional lost time reimbursable at an hourly rate up to $40. *Cf. In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, 1:14-md-02583-TWT (N.D. Ga. Mar. 7, 2016), Dkt. 181-2 at ECR 9 (allowing maximum of seven hours of reimbursable time at $15 per hour and providing for $10,000 maximum recovery for out-of-pocket losses per class member); *In re Premera Blue Cross Customer Data Sec. Breach Litig.,* Case No. 3:15-md-2633-SI, 2019 WL 3410382, at *22 (D. Or. July 29, 2019) (allowing maximum 20 hours of reimbursable time at $20 per hour, subject to $10,000 maximum per class member).

In addition, the quality and duration of the credit monitoring is directly on par with, and in many instances superior than, those products offered in similar data breach settlements. *See e.g. In re Premera Blue Cross Customer Data Security Breach Litig.,* Case No. 3:15-md-2633-SI (D. Or. May 30, 2019), Dkt. 273 at ECR 9-10 (Plaintiffs' Unopposed Motion and Supporting Memorandum for Preliminary Approval of Proposed Settlement Agreement) (listing benefits of Identity Guard credit monitoring and identity protection features) and *In re Premera Blue Cross Customer Data Sec. Breach Litig.,* 2019 WL 3410382, at *23 (granting preliminary approval of settlement, noting the credit monitoring and identity protection services offered by Identity Guard added "significant value to the Settlement Class"); *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.,* 2016 WL 6902351, at *4 (granting final approval and noting "18 months identity monitoring services [from Identity Guard] also confers a substantial benefit to the Settlement Class"); *In re Anthem, Inc. Data Breach Litig.,* 327 F.R.D. at 319 (discussing benefits to class of two-year credit monitoring subscription).  It is available to Settlement Class members and carries a retail value of $499.92 per Class member over a two-year term ($20.83 per month for 24 months). *See* https://www.identityguard.com/plans, last visited December 5, 2019.

So too are Banner's IT-security business practice changes of significant value to the Class. Banner has also already spent approximately ▮▮▮▮▮ on information security improvements since the Security Incident and has agreed spend an additional ▮ ▮▮▮ in 2019. *See In re Anthem, Inc. Data Breach Litig.,* 327 F.R.D. at 319 ("For example, Anthem must change its data retention policies, follow specific remediation schedules, and do annual IT security risk assessments and settlement compliance review. This nonmonetary relief benefits millions of Settlement Class Members, including those who did not submit a claim form. The Court finds that this nonmonetary relief further weighs in favor of final approval."); *cf.* Friedman Decl., Exhibit 1-C. Additionally, Banner has agreed to minimum IT Security spend levels for three years after the

Settlement Effective Date and to carry forward its new practices as well as to implement additional security practices. Given that Banner continues to possess the PII and PHI of Settlement Class members, the strength of Banner's IT security will continue to be of significant importance to Settlement Class members for the foreseeable future.

Finally, the value to the Class of these benefits is fair in view of the claims released by Plaintiffs and the Settlement Class. Because the release mirrors those that have won approval in other similar cases, its scope supports the conclusion that the amount offered in this settlement is fair. *See Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010).

**The Views of Counsel**. "The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008). And experienced counsel's judgment in this respect carries considerable weight. *See Nat'l Rural Telcomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004). Interim Co-Lead Class Counsel were appointed three years ago based on their substantial experience litigating complex class cases. Having worked on behalf of the putative class since the Security Incident was first announced, and having dedicated thousands of hours to the case, it is the informed opinion of Interim Co-Lead Class Counsel and the Executive Committee that, given the uncertainty and expense of pursuing this case through trial, the Settlement is fair, reasonable, and adequate and in the best interests of the Settlement Class. *See* Friedman Decl., ¶¶ 13 & 16.

### E.     The Proposed Notice Plan Should Be Approved

Rule 23 requires that, prior to final approval, the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). For classes certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Under Rule 23(c)(2)(B), "[t]he notice may be by one or more of the

following: United States mail, electronic means, or other appropriate means." Fed. R. Civ. P. 23(c)(2)(B) (effective Dec. 1, 2018).

The threshold requirement concerning class notice is whether the means employed to distribute the notice was reasonably calculated to apprise the Class of the pendency of the action, the proposed settlement, and the Settlement Class members' rights to opt out or to object. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). In this Circuit, it has long been the case that a notice of settlement will be adjudged "satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Rodriguez*, 563 F.3d at 962; *Hanlon*, 150 F.3d at 1025. The notice should also present information "neutrally, simply, and understandably," including "describ[ing] the aggregate amount of the settlement fund and the plan for allocation." *Rodriguez*, 563 F.3d at 962.

As discussed above in Section IV.C, above, the proposed notices here comply with Rule 23(c)(2)(B) in that they "clearly and concisely state in plain, easily understood language" a description of the Class, a description of the claims, the names of Class Counsel, a description of Settlement Class members' opportunity to appear at the Fairness Hearing, opt-out and objection specifics, and the manner in which to obtain further information. *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 496 (D.N.J. 1997), aff'd, 148 F.3d 283 (3d Cir. 1998).

In connection with implementation of the Notice Plan and administration of the Settlement benefits, Plaintiffs and Banner request the Court to appoint JND Legal Administration to serve as the Claims Administrator. JND is qualified and has administration experience in like matters, including serving as the claims administrator in the recent, preliminarily approved class action settlement in *In re: Equifax, Inc. Customer Data Security Breach Litigation, Case No.*: 1:17-md-2800-TWT (N.D. Ga.).[12]

---

[12] *See* https://www.jndla.com, last visited December 5, 2019.

1    Because the class notices and notice plan set forth in the Settlement satisfy the

2    requirements of due process and Federal Rule of Civil Procedure 23, and provide the best

3    notice practicable under the circumstances, the Court should direct the Parties and the

4    Claims Administrator to proceed with providing notice to Settlement Class members

5    pursuant to the terms of the Settlement and the Court's order granting preliminary

6    approval.

7         **F.    Appointment of Settlement Class Counsel & Class Representatives**

8         Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who

9    must] fairly and adequately represent the interests of the class." Fed. R. Civ. P.

10   23(g)(1)(B). In making this determination, courts generally consider: (1) the proposed

11   class counsel's work in identifying or investigating potential claims, (2) the proposed

12   class counsel's experience in handling class actions or other complex litigation, and the

13   types of claims asserted in the case, (3) the proposed class counsel's knowledge of the

14   applicable law, and (4) the proposed class counsel's resources committed to representing

15   the class. Fed. R. Civ. P. 23(g)(1)(A)(i-iv).

16        Here, Interim Co-Lead Class Counsel and Class Executive Committee Counsel

17   have spent a significant amount of time identifying the potential claims in this action and

18   pursuing the relevant discovery. They are recognized as experts in consumer law and

19   class-action litigation and have been appointed class counsel in major consumer class

20   action cases. *See* Friedman Decl., ¶ 4. And they have committed their full resources to

21   representing this Class and will continue that commitment in resolving this case and

22   administering the Settlement. *Id.*, ¶¶ 7-9; 11-13. Accordingly, the Court should appoint

23   Andrew S. Friedman and Paul L. Stoller as Co-Lead Class Counsel, and Eric Gibbs and

24   Robert Carey as Class Executive Committee Counsel.

25        The Court should also appoint Plaintiffs as Settlement Class Representatives.

26   They have fulfilled their duties in pursuing their claims and those of the Class, and they

27   have vigorously represented the Class in this matter.

28
                                          34

### G.     Settlement Deadlines

Once the Court directs notice of the settlement to the class, Plaintiffs propose the following schedule, with which Banner agrees:

| Event | Date |
|---|---|
| Banner to Disseminate Class Notice through Administrator | 30 days after receipt of class member information from Banner; 60 days after entry of order |
| Plaintiffs to File Motion for Final Approval and Award of Fees | 60 days after entry of order |
| Deadline for Class Members to Opt-Out of or Object to Settlement | 60 days after Notice |
| Replies in Support of Motions for Final Approval and Award of Fees | 120 days after entry of order |
| Final Approval Hearing | 130 days after entry of order |

## VI.     CONCLUSION

For the foregoing reasons, the parties respectfully request that the Court enter the accompanying proposed order directing notice of the proposed settlement to the class, appointing Class Counsel, and setting a hearing for the purpose of deciding whether to grant final approval of the settlement.

DATED this 5th day of December, 2019.

**BONNETT, FAIRBOURN, FRIEDMAN**
**& BALINT, P.C.**

By: _ s/ Andrew S. Friedman _
    Andrew S. Friedman
    William F. King
    2325 E. Camelback Road, Suite 1100
    Phoenix, Arizona 85016

Paul L. Stoller
**DALIMONTE RUEB STOLLER, LLP**
2425 E. Camelback Road, Suite 500
Phoenix, Arizona 85016
*Interim Co-Lead Class Counsel*

Eric H. Gibbs (pro hac vice)
David Stein (pro hac vice)
Amanda M. Karl (pro hac vice)
**GIRARD GIBBS LLP**
505 14th Street, Suite 1110
Oakland, California 94612
Telephone: (510) 350-9700
ehg@classlawgroup.com
ds@classlawgroup.com
amk@classlawgroup.com

Robert B. Carey (011186)
Leonard W. Aragon (020977)
Michella A. Kras (022324)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
11 West Jefferson Street, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
rob@hbsslaw.com
leonard@hbsslaw.com
michellak@hbsslaw.com

*Executive Committee Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing document filed through the ECF system on December 5, 2019 will be electronically sent to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to any non-registered participants.

Dated: December 5, 2019.

*s/Karen Vanderbilt*