1
2
3
4
5
6

Andrew S. Friedman (005425)
William F. King (023941)
**BONNETT FAIRBOURN FRIEDMAN**
   **& BALINT, P.C.**
2325 E. Camelback Road, Suite 300
Phoenix, Arizona 85016
Telephone: (602) 274-1100
afriedman@bffb.com
bking@bffb.com

7
8
9
10

Paul L. Stoller (016773)
**DALIMONTE RUEB STOLLER, LLP**
2425 E. Camelback Road, Suite 500
Phoenix, Arizona 85016
Telephone: (602) 888-2807
paul@drlawllp.com

11
12
13

*Co-Lead Counsel*

[Additional counsel appear on signature page]

14
15

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF ARIZONA

16
17
18
19
20
21

| | |
|---|---|
| In re Banner Health Data Breach Litigation | Case No. 2:16-cv-02696-PHX-SRB<br><br>Hearing Date: April 21, 2020<br>Hearing Time: 10:00 a.m.<br>Courtroom: 502, 5th Floor<br>Judge: Hon. Susan R. Bolton |

22
23
24
25
26
27
28

**PLAINTIFFS' MOTION AND MEMORANDUM OF LAW IN SUPPORT OF**

**REQUESTS FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS**

**[REDACTED]**

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................. 1

II.     FACTUAL BACKGROUND ................................................................. 2

        A.      Overview of the Litigation ..................................................... 3

        B.      Mediations and Settlement ..................................................... 4

III,    THE REQUESTED FEE IS REASONABLE........................................ 4

        A.      The Requested Fees Are Reasonable under the Percentage Method ........... 5

        B.      The Requested Fee Percentage is Below the Ninth Circuit Benchmark....... 7

        C.      The Requested Fee is Supported by Every Relevant Consideration............ 8

                1.      The Results Obtained for the Class .................................... 8

                2.      Risks of the Litigation and the Novelty of the Issues Presented...... 11

                3.      The Contingent Nature of the Representation................................. 13

                4.      Co-Lead Class Counsel's Level of Skill and Experience ................ 14

                5.      The Lodestar Cross-Check .............................................. 15

IV.     PLAINTIFFS' COUNSEL'S EXPENSES ARE REASONABLE ........................ 16

V.      THE REQUESTED SERVICE AWARDS ARE WARRANTED ........................ 17

VI.     CONCLUSION ................................................................................ 18

**TABLE OF AUTHORITIES**

**Cases**

*Adkins v. Facebook, Inc.*,
No. C 18-05982-WHA, 2019 WL 7212315 (N.D. Cal. Nov. 26, 2019) ............... 12

*Aichele v. City of L.A.*,
No. CV 12–10863–DMG (FFMx), 2015 WL 5286028 (C.D. Cal. Sept. 9, 2015) .. 5

*Bellinghausen v. Tractor Supply Co.*,
306 F.R.D. 245 (N.D. Cal. 2015) ......................................................................... 15

*Boeing Co. v. Van Gemert*,
444 U.S.472 (1980) ............................................................................................... 6

*Ching v. Siemens Indus.*,
No. 11-cv-048383-MEJ, 2014 WL 2926210 (N.D. Cal. June 27, 2014) ............... 13

*Covillo v. Specialtys Café*,
No. C-11-00594 DMR, 2014 WL 954516 (N.D. Cal. Mar. 6, 2014) .................... 15

*Cunningham v. Leslie's Poolmart, Inc.*,
No. CV 13-02122-CAS (CWx), 2016 WL 7173806 (C.D. Cal. Apr. 18, 2016) ... 17

*Fulford v. Logitech, Inc.*,
No. 08-CV-02041 MMC, 2010 WL 807448 (N.D. Cal. Mar. 5, 2010) ................ 18

*Hammond v. The Bank of N.Y. Mellon Corp.*,
No. 08 Civ. 6060(RMB)(RLE), 2010 WL 2643307 (S.D.N.Y. June 25, 2010) .... 11

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ............................................................................... 5

*Harris v. Marhoefer*,
24 F.3d 16 (9th Cir. 1994) ................................................................................... 16

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) ............................................................................................... 8

*Hopkins v. Stryker Sales Corp.*,
No. 11-CV-02786-LHK, 2013 WL 496358 (N.D. Cal. Feb. 6, 2013) ................... 15

*In re Activision Sec. Litig.*,
723 F. Supp. 1373 (N.D. Cal. 1989) ...................................................................... 5

*In re Am. Equity Annuity Practices & Sales Litig.*,
    No. CV-05-6735-CAS(MANx), 2014 WL 12586112 (C.D. Cal. Jan. 29, 2014) .. 11

*In re Anthem, Inc. Data Breach Litig.*,
    327 F.R.D. 299 (N.D. Cal. 2018) ..................................................................... 7, 10

*In re Anthem, Inc. Data Breach Litig.*,
    No. 15-MD-02617-LHK, 2018 WL 3960068 (N.D. Cal. Aug. 17, 2018) ......... 9, 12

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) .......................................................................... 4, 8

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
    No. 1:17-md-2800-TWT, 2020 WL 256132 (N.D. Ga. Jan. 13, 2020) ... 7, 9, 10, 12

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
    293 F.R.D. 21 (D. Me. 2013) ........................................................................... 11

*In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*,
    No. 1:14-md-02583-TWT, 2016 WL 6902351 (N.D. Ga. Aug. 23, 2016).............. 9

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ..................................................... 9, 11, 14

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015)..................................................................... 7, 8, 15

*In re Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ............................................................................. 11

*In re Premera Blue Cross Customer Data Sec. Breach Litig.*,
    No. 3:15-md-2633-SI, 2019 WL 3410382 (D. Or. July 29, 2019) ................... 9, 10

*In re Prudential Ins. Co. of Am. SGLI/VGLI Contract Litig.*,
    Nos. 11-md-02208-MAP, etc., 2014 WL 6968424 (D. Mass. Dec. 9, 2014) ........ 17

*In re Rite Aid Corp. Sec. Litig.*,
    396 F.3d 294 (3d Cir. 2005) ............................................................................. 15

*In re Target Corp. Customer Data Sec. Breach Litig.*,
    892 F.3d 968 (8th Cir. 2018)............................................................................... 6

*In re TJX Cos. Retail Sec. Breach Litig.*,
    246 F.R.D. 389 (D. Mass. 2007) ...................................................................... 12

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
    19 F.3d 1291 (9th Cir. 1994)................................................................. 13

*In re Xcel Energy, Inc.*, *Sec., Deriv. & "ERISA" Litig.*,
    364 F. Supp. 2d 980 (D. Minn. 2005) ................................................. 14

*Johansson-Dohrmann v. Cbr Sys., Inc.*,
    No. 12-cv-1115-MMA (BGS), 2013 WL 3864341 (S.D. Cal. July 24, 2013) ........ 9

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998)............................................................. 11

*Lozano v. AT&T Wireless Servs., Inc.*,
    No. 2:02-CV-00090-CAS (AJWx),
    2010 WL 11520704 (C.D. Cal. Nov. 22, 2010)............................... 13, 14

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
    Nos. CV-05-6838-CAS(MANx), CV-05-8909-CAS(MANx),
    2015 WL 12592726 (C.D. Cal. March 17, 2015) .......................... 14, 18

*Nwabueze v. AT&T Inc.*,
    No. C 09-01529 SI, 2014 WL 324262 (N.D. Cal. Jan. 29, 2014)......................... 5

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,
    688 F.2d 615 (9th Cir. 1982)............................................................... 13

*Quezada v. Schneider Logistics Transloading & Distrib., Inc.*,
    No. CV 12-2188 CAS (DTBx), 2014 WL 12584436 (C.D. Cal. May 12, 2014) .. 18

*Rodriguez v. West Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009)............................................................... 17

*Scovil v. FedEx Ground Package Sys., Inc.*,
    No. 1:10-CV-515-DBH, 2014 WL 1057079 (D. Me. Mar. 14, 2014).................. 17

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
    904 F.2d 1301 (9th Cir. 1990).............................................................. 5

*Smith v. Triad of Alabama, LLC*,
    No. 1:14-CV-324-WKW, 2017 WL 1044692 (M.D. Ala. Mar. 17, 2017)............ 12

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003)............................................................... 7

iv

*Stern v. New Cingular Wireless Servs., Inc.*,
     No. 8:09-CV-01112-CAS (AGRx) 2010 WL 11531076,
     (C.D. Cal. Nov. 22, 2010) ................................................................. 5, 15

*United States v. Armour & Co.*,
     402 U.S. 673 (1971) ............................................................................ 13

*Vizcaino v. Microsoft Corp.*,
     142 F. Supp. 2d 1299 (W.D. Wash. 2001) ............................................. 8

*Vizcaino v. Microsoft Corp.*,
     290 F.3d 1043 (9th Cir. 2002) ....................................................... *passim*

*Zucker v. Occidental Petroleum Corp.*,
     192 F.3d 1323 (9th Cir. 1999) .............................................................. 5

**RULES**

Fed.R. Civ. P. 23 ................................................................................................

## I.      INTRODUCTION

Class Counsel[1] zealously litigated these Consolidated Actions for more than three years, ultimately achieving a favorable settlement providing substantial benefits for the approximate 2.9 million Settlement Class members. Class Counsel defeated in large part Banner's successive motions to dismiss. They conducted targeted discovery to develop evidence supporting Plaintiffs' claims—reviewing hundreds of thousands of documents and data produced by Banner. And after carefully analyzing the merits of Plaintiffs' claims and Banner's defenses, all with the assistance of multiple consulting experts, they successfully negotiated the proposed class settlement with the involvement of two highly-regarded and experienced mediators.

The resulting Settlement Agreement provides significant, immediate benefits to the Settlement Class, conservatively valued at nearly $80 million. Banner will pay Ordinary Expenses of up to $500 per Settlement Class member and Extraordinary Expenses of up to $10,000 per Settlement Class member, subject to an overall cap of $6,000,000. It will provide two (2) years of state-of-the-art Credit and Identity-Monitoring services, having a retail value of $499.92 per Settlement Class member, or $14,497,680 for every one percent (1%) of the Settlement Class members who enroll to receive these services. Considering the ███ claim response rate to Banner's initial credit monitoring offer, Class Counsel have concluded that a participation rate of approximately five-percent (5%) is a reasonable and conservative estimate, which as applied would yield a benefit of $72,488,400. In addition, Banner will pay all costs of administration, including at least $1 million in mailing costs alone.[2] The estimated value, however, does not account for the additional considerable funds that Banner has and will spend as a result of the Settlement to remediate

---

[1] Capitalized terms in this memorandum have the same meaning as those terms are defined in the Settlement Agreement.

[2] Notably, the $2,900,000 in costs and attorneys' fees, if approved, are separate and apart from the benefits made available to the Settlement Class.

and improve its information security systems that continue to house the Settlement Class members' PII, PHI, and PCI, namely Banner's commitment to a ███████████ investment to improve its cybersecurity protections and technologies, as well as its agreement to maintain for ████████████████████ ████████████ of its overall IT budget to invest in and maintain leading edge information security protections.

Class Counsel prosecuted the class claims and generated the Settlement benefits on an entirely contingent basis, with no guarantee of recovering their fees and expenses. They now seek $2,621,443.96 in fees, which falls well within the Ninth Circuit's benchmark for a presumptively reasonable fee award, and $278,556.04 in out-of-pocket expenses incurred to secure a favorable result for the Settlement Class members.

Based on the results obtained for the Settlement Class in this complex and risky litigation, the time and effort devoted by Plaintiffs' counsel, the skill and expertise required to litigate the Consolidated Actions, and the risks shouldered by Plaintiffs' counsel, the requested fee and expense award is eminently fair and reasonable. That is particularly so given that the requested fee award is substantially less than Plaintiffs' counsels' collective lodestar, resulting in a negative multiplier.

Finally, the Court should approve service awards of $5,000 to each of the Class Representatives—as provided by the Settlement Agreement—to compensate them for their efforts on behalf of the Settlement Class.

## II. FACTUAL BACKGROUND

Consistent with the 2018 amendments to Rule 23 requiring "front loading" of information pertaining to a proposed class action settlement, Plaintiffs' Motion and Memorandum of Law in Support of Plaintiffs' (1) Motion for Preliminary Approval of Class Action Settlement, (2) Preliminary Certification of Settlement Class, and (3) Appointment of Settlement Class Counsel and Class Representatives (Doc. 170) describes the background of this litigation and Class Counsel's work prior to that motion.

Accordingly, Class Counsel will not repeat the information already submitted to the Court in prior submissions but will instead summarize the relevant historical and procedural backgrounds and those factors warranting the instant fee and expense request.

### A.    Overview of the Litigation

In June 2016, financially motivated cyber-criminals penetrated Banner's computer network, rummaged through Banner's information systems, installed hacking software, and exfiltrated massive quantities of PII, PHI, and PCI belonging to approximately 2.9 million people (the "Security Incident"). The Security Incident was the largest healthcare data breach of 2016 and exposed Banner patients, insureds, providers, and payment-card users to the significantly increased risk and expense of devastating financial and medical identity theft.[3] Banner publicly announced the Security Incident on August 3, 2016. Shortly thereafter, eleven putative class-action lawsuits were filed against Banner. [*See* Joint Final & Fee Declaration ("Decl."), ¶ 6, filed concomitantly herewith.] The cases were consolidated before this Court in late 2016, and recaptioned as *In re Banner Health Data Breach Litigation*. [*Id.*] Interim Co-Lead Class Counsel and an Executive Committee were appointed to represent the putative class. [*Id.*]

After consolidation, Plaintiffs' counsel defended against and successfully overcame Banner's successive motions to dismiss. [Decl., ¶¶ 7 through 10.] From that point forward, Class Counsel conducted substantial formal and informal discovery to develop evidence relevant to Plaintiffs' claims and Banner's defenses. [*Id.*, ¶ 12.] For the better part of two years, Class Counsel, with the help of retained consulting experts, conducted an extensive but targeted discovery program into the key liability and damages issues surrounding the Security Incident and its aftermath. [*Id.*, ¶¶ 12 through 31.] Aggressive discovery efforts continued until the case settled. [*Id.*]

---

[3] *See* https://www.hipaajournal.com/largest-healthcare-data-breaches-of-2016-8631/, last visited February 10, 2020.

**B.    Mediations and Settlement**

The Settlement is the product of extensive arm's length negotiations between the Parties with the assistance of two experienced and highly regarded mediators, the Hon. Judge Jay C. Gandhi (Ret.) and Craig Phillips, over three different mediation sessions spanning December 11, 2018, through August 7, 2019. [*Id.*, ¶ 33.] The initial mediation on December 11, 2018 before the Hon. Judge Jay C. Gandhi (Ret.) failed. [*Id.*] Undeterred, the Parties then attended two additional mediations before a new mediator, Craig Phillips, which resulted in a tentative class settlement at the conclusion of the second session on August 7, 2019. [*Id.*] The benefits achieved as set forth under the Settlement Agreement largely accomplished the relief sought and pursued from the initial negotiations, namely cash compensation for those who suffered out-of-pocket losses and spent time as a result of the Security Incident, high-quality credit monitoring and identify restoration services to all class members, and other terms requiring Banner to invest in its cybersecurity infrastructure and to comply with comprehensive data security standards on a go-forward basis. [*Id.*]

**III.    THE REQUESTED FEE IS REASONABLE**

Under the Settlement, and subject to Court approval, Banner has agreed to pay an award of attorneys' fees and costs to Class Counsel up to $2,900,000 [Dkt. 171-1, Ex. 1 at ¶ 44; Decl., ¶ 80.] The fee portion of Plaintiffs' counsels' request, which amounts to $2,621,443.96 (after deduction of the $278,556.04 of litigation expenses) represents approximately 3.276% of the estimated $80 million in benefits made available to the Settlement Class through the exclusive efforts of Class Counsel. [*Id.*, ¶ 81.] *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 943 (9th Cir. 2011) (courts may evaluate the reasonableness of the fee award in light of the "constructive common fund" made available by the settlement). And under a lodestar crosscheck, the requested fee award of $2,621,443.96 yields a ***negative*** multiplier of approximately .7581 as compared to Plaintiffs' Counsels' total reported lodestar of $3,457,746.50.  [*Id.*, ¶¶ 82 & 83.]

A.     **The Requested Fees Are Reasonable under the Percentage Method.**

"In a class action, the district court must exercise its inherent authority to ensure that the amount and mode of payment of attorneys' fees are fair and appropriate." *Stern v. New Cingular Wireless Servs., Inc.*, No. 8:09-CV-01112-CAS (AGRx), 2010 WL 11531076, at *3 (C.D. Cal. Nov. 22, 2010) (Snyder, J.) (citing *Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1328 (9th Cir. 1999)). "In calculating attorneys' fees in class actions, the district court has discretion to use either a percentage or lodestar method in order to calculate the attorneys' fees to be awarded to counsel." *Id.* (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998)). As the Ninth Circuit has explained, however, "the primary basis of the fee award remains the percentage method," while "the lodestar may provide a useful perspective on the reasonableness of a given percentage award." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002) ("*Vizcaino II*"); *see also Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (approving calculation of attorneys' fees based on percentage of the total fund); *Nwabueze v. AT&T Inc.*, No. C 09-01529 SI, 2014 WL 324262, at *1 (N.D. Cal. Jan. 29, 2014) ("where a settlement does not create a common fund from which to draw, a court may, in its discretion, analyze the case as a "constructive common fund" for fee-setting").

Many courts and commentators have recognized that the percentage of the available fund analysis is the preferred approach in class action fee requests "because it more closely aligns the interests of the counsel and the class, *i.e.*, class counsel directly benefit from increasing the size of the class fund and working in the most efficient manner." *Aichele v. City of L.A.*, No. CV 12–10863–DMG (FFMx), 2015 WL 5286028, at *5 (C.D. Cal. Sept. 9, 2015) (citing cases). "[A] number of salutary effects can be achieved by this procedure, including removing the inducement to unnecessarily increase hours, prompting early settlement, reducing burdensome paperwork for counsel and the court and providing a degree of predictability to fee awards." *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1376 (N.D. Cal. 1989).

As set forth above, Banner has agreed to pay Ordinary Expenses of up to $500 per Settlement Class member and Extraordinary Expenses of up to $10,000 per Settlement Class member, subject to an overall cap of $6,000,000, benefits that are at least equal to, if not more favorable than similar settlement terms approved in other data breach class settlements. [Decl., ¶ 68 & 69.] Banner will provide two (2) years of state-of-the-art Credit and Identity-Monitoring services, with an estimated value of $72,488,400 based on a conservative 5% utilization rate.[4] [*Id.*, ¶ 66.] And, in addition, Banner will pay all costs of administration (including at least $1 million in mailing costs alone). [*Id.*, ¶ 81.]

Under the percentage method, the requested fee, $2,621,443.96, is approximately 3.276% of the approximately $80 million in benefits made available to the Settlement Class. But again, the requested fee actually represents an even lower percentage of the recovery because it does not credit Plaintiffs' counsel for other valuable settlement benefits, including Banner's IT-security business-practice enhancements, its ██████ ██████ campaign to improve its information security systems, or its ██████ commitment following final approval to spend ██████████████ of its overall IT budget to invest in and maintain leading practice information security solutions. [Decl., ¶¶ 45 through 49; 70 & 71.]

Although difficult to value on a settlement-class basis, these prospective business practice improvements provide an additional benefit to all Settlement Class members because Banner continues to maintain protected information even for those patients and insureds who no longer receive medical treatment at Banner's facilities. [*Id., ¶ 70.] See In re Target Corp. Customer Data Sec. Breach Litig.*, 892 F.3d 968, 974 n.6 (8th Cir. 2018)

---

[4] Again, for every one percent (1%) of the Settlement Class members who enroll to receive these services, the retail value to the Settlement Class is approximately $14,497,680. [Decl., ¶ 66.] Based on the ██████ claim response rate to Banner's initial credit monitoring offer, Class Counsel have concluded that a participation rate of approximately 5% is a reasonable and conservative estimate, which as applied would yield an approximated benefit of $72,488,400. *See also, e.g.*, *Boeing Co. v. Van Gemert*, 444 U.S. 472, 480 (1980) (class members' "right to share the harvest of the lawsuit, whether or not they exercise it, is a benefit of the fund created by the efforts of ... class counsel").

("[T]he injunctive relief [implementation of data security measures] … has value to all class members"); *In re Anthem, Inc. Data Breach Litig. ("Anthem")*, 327 F.R.D. 299, 319 (N.D. Cal. 2018) ("For example, Anthem must change its data retention policies, follow specific remediation schedules, and do annual IT security risk assessments and settlement compliance review. This nonmonetary relief benefits millions of Settlement Class Members, including those who did not submit a claim form. The Court finds that this nonmonetary relief further weighs in favor of final approval."); *In re Equifax Inc. Customer Data Sec. Breach Litig. ("Equifax")*, No. 1:17-md-2800-TWT, 2020 WL 256132, at *3 (N.D. Ga. Jan. 13, 2020 ("Equifax's binding financial commitment to spend $1 billion on data security and related technology substantially benefits the class because it ensures adequate funding for securing plaintiffs' information long after the case is resolved.").

Even though Class Counsel premise their fee request only on the direct monetary benefits afforded by the Settlement, the Court may nevertheless consider the undeniably substantial value of the prospective relief obtained as a "relevant circumstance" in determining the appropriate percentage of the common fund that class counsel should receive as attorneys' fees. *Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir. 2003).

**B.    The Requested Fee Percentage is Below the Ninth Circuit Benchmark.**

"[I]n common fund cases, the 'benchmark' award is 25 percent of the recovery obtained, with 20–30% as the usual range." *Vizcaino II*, 290 F.3d at 1047. "While the benchmark is not per se valid, it is a helpful 'starting point.'" *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 955 (9th Cir. 1995) (quoting *Vizcaino II*, 290 F.3d at 1048). Here, the percentage of the aggregate available monetary benefits sought by Co-Lead Counsel (approximately 3.276%) is presumptively reasonable because it is far less than the established Ninth Circuit benchmark for attorneys' fees awarded in percentage of recovery cases.

**C.**   **The Requested Fee is Supported by Every Relevant Consideration.**

The requested fee amount is also supported by each of the normative considerations under governing Ninth Circuit precedent, which include: (1) the extent to which class counsel 'achieved exceptional results for the class,' (2) whether the case was risky for class counsel, (3) whether counsel's performance 'generated benefits beyond the cash settlement fund,' (4) the market rate for the particular field of law (in some circumstances), (5) the burdens class counsel experienced while litigating the case (e.g., cost, durations, foregoing other work), and (6) whether the case was handled on a contingency basis. *In re Online DVD-Rental Antitrust Litig.,* 779 F.3d at 954-55 (citing *Vizcaino II*, 290 F.3d at 1048-50).

In assessing the reasonableness of the fee award, the Court may also consider other factors established for determining the reasonableness of a lodestar multiplier (which substantially overlap with the *Vizcaino II* factors). Those factors include: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Vizcaino v. Microsoft Corp.*, 142 F. Supp. 2d 1299, 1306 (W.D. Wash. 2001), *aff'd*, 290 F.3d 1043 (9th Cir. 2002).

Because consideration of these factors would, if anything, support an ***upward*** adjustment from the Ninth Circuit's 25% benchmark, *a fortiori* they support Class Counsel's instant approximate 3.276% request.

**1.**   **The Results Obtained For the Class**

The most critical factor in evaluating the reasonableness of a fee request is the degree of success in achieving results for the class. *Hensley v. Eckerhart*, 461 U.S. 424, 434-36 (1983); *In re Bluetooth Headsets Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir.

8

2011). Outstanding results merit a higher fee. *In re Omnivision Techs., Inc. ("In re Omnivision")*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (awarding a fee of 28 percent where class counsel achieved "triple the average recovery in securities class action settlements").

The Settlement Agreement's benefits are tailored to address the fundamental concerns raised in the Action, providing meaningful monetary relief conservatively valued at nearly $80 million, even without considering the enormous value of Banner's cyber-security improvements and future spending commitments. [Decl., ¶¶ 45 through 49; 70 & 71.] *See In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2018 WL 3960068, at *11 (N.D. Cal. Aug. 17, 2018) (value of nonmonetary relief was a "relevant circumstance" in determining attorneys were entitled to 27% of a $115 million cash common fund).

The quality and duration of the Credit Monitoring and Identity Protection services—which carry a retail value[5] of $499.92 per Settlement Class member—are directly on par with, and in many instances superior than, those products offered in similar data breach settlements. [Decl., ¶¶ 66 & 67.] *See e.g. In re Premera Blue Cross Customer Data Sec. Breach Litig.*, No. 3:15-md-2633-SI, 2019 WL 3410382, at *23 (D. Or. July 29, 2019) (granting preliminary approval of settlement, noting the credit monitoring and identity protection services offered by Identity Guard added "significant value to the Settlement Class"); *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-md-02583-TWT, 2016 WL 6902351, at *4 (N.D. Ga. Aug. 23, 2016) (granting final approval and noting "18 months identity monitoring services [from Identity Guard] also confers a

---

[5] The retail value of these services (rather than the discounted bulk cost) is the proper gauge to apply here, given that this represents the value of the benefit Settlement Class members will actually receive. *See, e.g., Johansson-Dohrmann v. Cbr Sys., Inc.*, No. 12-cv-1115-MMA (BGS), 2013 WL 3864341, at *9 (S.D. Cal. July 24, 2013); *Equifax*, 2020 WL 256132, at *38 ("[C]ourts have often recognized the benefit of credit monitoring, use its retail cost as evidence of value, and consider that value in awarding fees.") (collecting cases).

substantial benefit to the Settlement Class"); *Anthem*, 327 F.R.D. at 319 (discussing benefits to class of two-year credit monitoring subscription); *Equifax*, 2020 WL 256132, at *17 ("This Court has repeatedly lauded high-quality credit monitoring services as providing valuable class-member relief that would likely not otherwise be recoverable at trial, as have other courts in connection with other data breach settlements.") (collecting cases).

The monetary-reimbursement benefits of up to $6,000,0000 made available by the Settlement Class are also on par with, if not more favorable than similar benefits approved by the courts in other data breach class settlements. [Decl., ¶¶ 68 & 69.] Under the Settlement Agreement, Settlement Class members can submit claims for lost time of up to eighteen (18) hours: three (3) hours of lost time reimbursable at $15 an hour; and, if documented and supported, fifteen (15) hours of additional lost time reimbursable at an hourly rate as high as $40. [Doc. 171-1, Ex. 1 at ¶¶ 21 & 22]; *Cf. In re The Home Depot, Inc., Customer Data Sec. Breach Litig*., 1:14-md-02583-TWT (N.D. Ga. Mar. 7, 2016), Dkt. 181-2 at ECR 9 (allowing maximum of seven (7) hours of reimbursable time at $15 per hour and providing for $10,000 maximum recovery for out-of-pocket losses per class member); *In re Premera Blue Cross Customer Data Sec. Breach Litig.,* 2019 WL 3410382, at *22 (allowing maximum twenty (20) hours of reimbursable time at $20 per hour, subject to $10,000 maximum per class member); *Anthem*, 327 F.R.D. at 310 (granting final approval) (noting class members may submit claims up to $10,000 for reimbursement of out-of-pocket costs).[6]

Finally, Class Counsel negotiated a streamlined, straightforward notice program that Banner has agreed to fund, including postcard notice, a dedicated website, and staffing of a toll-free hotline, all to facilitate and increase class member participation. [Decl., ¶ 51.] That program, along with the claims process, provides direct additional benefits to the Settlement Class.

---

[6] Copies of unreported decisions are appended to the Friedman Decl., Doc. 171-6.

**2.**     **Risks of the Litigation and the Novelty of the Issues Presented**

"The risk that further litigation might result in Plaintiffs not recovering at all, particularly a case involving complicated legal issues, is a significant factor in the award of fees." *In re Omnivision*, 559 F. Supp. 2d at 1046-47. *Accord In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (upholding fee award "because of the complexity of the issues and the risks"); *see also, e.g., In re Am. Equity Annuity Practices & Sales Litig.*, No. CV-05-6735-CAS(MANx), 2014 WL 12586112, at *6 (C.D. Cal. Jan. 29, 2014) ("In determining reasonable compensation to Class Counsel, the Court is mindful that this litigation was especially complex. As the Court observed for several years, the litigation called upon a high level of skill and experience in class actions for Plaintiffs to succeed against Defendant ..., which also had first-rate legal representation."). Although nearly all class actions involve a high level of risk, expense, and complexity, *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998), data breach cases are especially so. *See, e.g.*, *Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060(RMB)(RLE), 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting cases).

The Consolidated Actions involved complicated and highly technical issues that required Class Counsel to acquire a detailed working knowledge of Banner's pre-Incident network configuration and the facts and alleged security failures that led to the Incident— all as detailed in the Intrusion Investigation Report prepared by Mandiant after the breach as well as Banner's initial and supplemental response to the U.S. Department of Health and Human Services Office for Civil Rights—and then apply what are otherwise traditional negligence concepts to nuanced, and legally uncharted issues of causation and damages. [Decl., ¶ 93.]

These complicated issues posed significant obstacles to class certification. [*Id.*, ¶¶ 59 & 60; 94.] Indeed, courts have reached divergent decisions on plaintiffs' efforts to obtain class certification in data-breach cases. *Compare In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21, 35 (D. Me. 2013) (denying certification),

and *In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. 389, 401 (D. Mass. 2007) (same), with *Smith v. Triad of Alabama, LLC*, No. 1:14-CV-324-WKW, 2017 WL 1044692, at *13 (M.D. Ala. Mar. 17, 2017) (granting certification); *see also Equifax*, 2020 WL 256132, at *7 (granting final approval) ("Class certification outside of the settlement context also poses a significant challenge.") (citing *Adkins v. Facebook, Inc.*, No. C 18-05982-WHA, 2019 WL 7212315, at *9 (N.D. Cal. Nov. 26, 2019) (denying motion to certify data breach damages class)).[7] Compounding these risks is the reality of the non-static data-breach-specific case law that is currently evolving with differing results; there is no guarantee for either side of the ultimate result. *See In re Anthem, Inc. Data Breach Litig.*, 2018 WL 3960068, at *11 ("To begin, data-breach litigation is an actively developing field of the law where much of the legal landscape is still shifting and unsettled."). Thus, while Class Counsel remain confident that class certification would have been granted, there is a significant risk that Banner might successfully oppose certification. [Decl., ¶¶ 58 & 59.]

Even then, Plaintiffs would have had to overcome Banner's motion for summary judgment, which would have asserted cutting-edge legal arguments centered upon lack of causation (through Dark Web analyses), damages, and standing. [*Id.*, ¶ 60.] While Plaintiffs remain confident they would have overcome Banner's summary judgment request, absent settlement, some or all of their remaining claims would have doubtlessly been vulnerable to summary disposition. [*Id.*]

On top of achieving class certification and defeating summary judgment, Plaintiffs would need then need to overcome Banner's inevitable *Daubert* challenges, and then distill what would be complicated expert testimony to convince a jury to render a verdict in their favor. [*Id.*, ¶ 61.]

---

[7] Plaintiffs note that most data-breach actions have resolved prior to contested certification proceedings. While Plaintiffs strongly believe that certification would be appropriate in this case, they are cognizant that the issue remains less than certain and presents them an essentially case-ending risk if they were to proceed and fail to certify a class.

Assuming *arguendo* Plaintiffs could run this procedural, legal, and evidentiary gauntlet, any recovery for the class would be delayed for years by post-trial motions and appeals. The proposed Settlement therefore achieves a far more certain and preferable result for the Settlement Class members than continued litigation, as it strikes an appropriate balance between the potential benefits, on the one hand, and the risks and costs associated with continued litigation, on the other. [Decl., ¶¶ 62 & 63.] *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982); *United States v. Armour & Co.*, 402 U.S. 673, 681-82 (1971).

### 3.    The Contingent Nature of the Representation

The "risks and financial burdens that Class Counsel undertook in litigating the Consolidated Actions on a fully contingent basis" are also important factors in assessing the reasonableness of the requested attorney's fee award. *Lozano v. AT&T Wireless Servs., Inc.*, No. 2:02-CV-00090-CAS (AJWx), 2010 WL 11520704, at *1 (C.D. Cal. Nov. 22, 2010). Indeed, "[c]ourts have long recognized that the public interest is served by rewarding attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might have been paid nothing for their work." *Ching v. Siemens Indus.*, No. 11-cv-048383-MEJ, 2014 WL 2926210, at *8 (N.D. Cal. June 27, 2014) (citing *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994) (explaining that "[c]ontingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose."). "This mirrors the established practice in the private legal market of rewarding attorneys for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases." *Vizcaino II*, 290 F.3d at 1051.

Here, Plaintiffs' Counsel assumed the risk of representation, including advancing $278,556.04 in potentially non-recoverable expenses, on a completely contingent basis in

litigation dependent on evolving jurisprudence. [Decl., ¶¶ 58 & 59; 79; 90 & 91; 97.] This assumption of risk justifies a fee paid as a percentage of recovery. *Lozano*, 2010 WL 11520704, at *1; *accord*, *In re Omnivision*, 559 F. Supp. 2d at 1047 ("This substantial outlay, when there is a risk that none of it will be recovered, further supports the award of the requested fees.").

### 4.    Co-Lead Counsel's Level of Skill and Experience

The effort and skill displayed by counsel is an additional factor used in determining a proper fee. *Vizcaino II*, 290 F.3d at 1048; *In re Omnivision*, 559 F. Supp. 2d at 1047.  The Settlement Agreement was achieved by Class Counsel, who cumulatively have decades of experience in prosecuting and trying complex consumer class actions, including data breach cases. [Decl., ¶ 95.] That experience proved invaluable in litigating the Action and enabled Plaintiffs' counsel not only to focus discovery on key liability issues, but also to assess and understand the strengths of both Plaintiffs' claims and Banner's defenses, and the reasonableness of the benefits provided for under the Settlement Agreement. [*Id.*]; *see also see, e.g.*, *In re Xcel Energy, Inc.*, *Sec., Deriv. & "ERISA" Litig.*, 364 F. Supp. 2d 980, 996 (D. Minn. 2005) ("But for the cooperation and efficiency of counsel, the lodestar of plaintiffs' counsel would have been substantially more and would have required this court to devote significant judicial resources to its managements of the case. Instead, counsel moved the case along expeditiously, and the court determines that the time and labor spent to be reasonable and fully supportive [of the awarded attorney fee]."). As a consequence, despite its complexity this litigation moved more expeditiously and culminated in a relatively early, favorable settlement. *See also, e.g., Negrete v. Allianz Life Ins. Co. of N. Am.*, Nos. CV-05-6838-CAS(MANx), CV-05-8909-CAS(MANx), 2015 WL 12592726, at *13 (C.D. Cal. March 17, 2015) (observing "the zealousness with which Class Counsel prosecuted this Action . . ., and the exceptionally high quality of Class Counsel's representation of the Settlement Class").

### 5.  The Lodestar Cross-Check

The Court may conduct a lodestar cross-check to confirm the reasonableness of a requested percentage fee award. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 949 ("a crosscheck using the lodestar method can confirm that a percentage of recovery amount does not award counsel an exorbitant hourly rate") (internal quotation marks and citation omitted). The lodestar cross-check calculation need not entail "mathematical precision nor bean counting," and the Court may rely on summaries submitted by the attorneys rather than reviewing actual billing records. *Covillo v. Specialtys Café*, No. C-11-00594 DMR, 2014 WL 954516, at *6 (N.D. Cal. Mar. 6, 2014) (citing *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306-07 (3d Cir. 2005)); *see also, e.g., Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 264 (N.D. Cal. 2015) (accepting sworn declarations submitted by counsel). Here, Plaintiffs' Counsel has submitted declarations reporting, after the exercise of billing judgment, 6,532.80 hours of time, for a total lodestar of $3,457,746.50. [Decl., ¶¶ 82 & 83.]

After determining the lodestar, the Court divides the total fees sought by the lodestar to arrive at the multiplier. *Bellinghausen*, 306 F.R.D. at 265. "The purpose of this multiplier is to account for the risk Class Counsel assumes when they take on a contingent-fee case." *Id.* (quoting *Hopkins v. Stryker Sales Corp.*, No. 11-CV-02786-LHK, 2013 WL 496358, at *4 (N.D. Cal. Feb. 6, 2013)). If the multiplier falls within an acceptable range, it further supports the conclusion that the fees sought are, in fact, reasonable. *See Vizcaino II*, 290 F.3d at 1051. "[D]istrict courts have applied a wide range of multipliers—generally ranging from 2 to 4—in making fee award determinations." *Stern,* 2010 WL 11531076, at *3. Here, Plaintiffs' Counsel's reported lodestar yields a ***negative*** multiplier of approximately .7581, which is well-under the accepted range within this Circuit. [Decl., ¶ 82.] *Vizcaino II,* 290 F.3d at 1047–48 (collecting sampling of published, common fund settlements in the $50 million to $200 million range from 1996 and 2001, with multipliers spanning from 0.6 to 8.5).

As detailed in their respective individual declarations,[8] Plaintiffs' Counsel are well-respected members of the bar who are highly experienced in the areas of consumer class actions, data breach class actions, and complex litigation. [Decl., ¶ 84.] And as each Plaintiffs' Counsel avows, the hourly rates submitted reflect actual and customary billing rates. [*Id.*] These rates are reasonable, have been approved in various courts, and are comparable to the rates for other law firms in the relevant geographical market. [*Id.*]

The lodestar cross-check thus confirms the reasonableness of the requested fee award, particularly in light of the significant results achieved by the Settlement, the contingent nature of Class Counsel's fee arrangement, and the skill and expertise Class Counsel employed maneuvering the case towards settlement.

## IV.    PLAINTIFFS' COUNSEL'S EXPENSES ARE REASONABLE

Plaintiffs' Counsel seek Court approval of $278,556.04 in reimbursed expenses necessarily incurred in the prosecution of this action.  [Decl., ¶¶ 97 through 100.] All submitted expenses are of the sort typically billed by attorneys to paying clients.  *See generally Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994). A major component of Class Counsel's expenses include the cost of experts and consultants, which were necessary given the novel, difficult and complex liability and damages issues presented in the Consolidated Actions. [Decl., ¶ 99.] Plaintiffs' Counsel's expenses also included standard charges for computerized factual and legal research, which is unsurprising given the complex issues in this case and the developing state of the law in data-breach cases. [*Id.*, ¶ 100].

---

[8] *See* Exhibit A, Declaration of Andrew S. Friedman; Exhibit B, Declaration of Paul L. Stoller; Exhibit C, Declaration of David M. Berger; Exhibit D, Declaration of Leonard W. Aragon; Exhibit E, Declaration of Stephen R. Basser; Exhibit F, Declaration of John G. Emerson; Exhibit G, Declaration of Karen Hanson Riebel; Exhibit H, Declaration of Joseph J. DePalma; Exhibit I, Declaration of Cari Campen Laufenberg; Exhibit J, Declaration of Benjamin J. Johns; Exhibit K, Declaration of Christopher D. Jennings; and Exhibit L, Declaration of Hadley L. Matarazzo. Co-Lead Counsel are relying on the accuracy and legitimacy of each counsel's reported amount of time and expenses as set forth in Plaintiffs' Counsel's respective declarations.

## V.     THE REQUESTED SERVICE AWARDS ARE WARRANTED

Service awards for named plaintiffs are provided to encourage them to undertake the responsibilities and risks of representing the classes and to recognize the time and effort spent in the case. *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009) (explaining that such awards "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general"); *see also Scovil v. FedEx Ground Package Sys., Inc.*, No. 1:10-CV-515-DBH, 2014 WL 1057079, at *6 (D. Me. Mar. 14, 2014) ("Because a named plaintiff is an essential ingredient of any class action, an incentive or service award can be appropriate to encourage or induce an individual to participate in the suit.") A service award is appropriate where the class representatives "have actively participated and assisted Class Counsel in this litigation for the substantial benefit of the Settlement Class despite facing significant personal limitations and sacrifices." *In re Prudential Ins. Co. of Am. SGLI/VGLI Contract Litig.*, Nos. 11-md-02208-MAP, etc., 2014 WL 6968424, at *7 (D. Mass. Dec. 9, 2014); *see generally, Rodriguez*, 563 F.3d at 958 ("Incentive awards are fairly typical in class action cases.").

Each of the Plaintiffs have spent a significant amount of time assisting Class Counsel in litigating the Action for the benefit of absent class members. [Decl., ¶ 103.] Plaintiffs actively assisted Class Counsel in gathering facts for this case and reviewing pleadings and discovery, including preparing and sitting for their depositions. [*Id.*] The class representatives' time and effort expended on behalf of the Settlement Class as a whole should not go unrecognized. The Court should therefore approve of a $5,000 service award to each Plaintiff, which Banner has agreed to pay as a term of the Settlement Agreement. [*Id.*, ¶ 104.] As the Court will note, the requested amount is consistent with or falls below service awards previously approved by courts in this Circuit. *See, e.g., Cunningham v. Leslie's Poolmart, Inc.*, No. CV 13-02122-CAS (CWx), 2016 WL 7173806, at *2 (C.D.

Cal. Apr. 18, 2016) (approving payment of $10,000 service awards to each of the Plaintiffs); *Negrete*, 2015 WL 12592726, at *15 (same); *Quezada v. Schneider Logistics Transloading & Distrib., Inc.*, No. CV 12-2188 CAS (DTBx), 2014 WL 12584436, at *12 (C.D. Cal. May 12, 2014) (explaining that "other courts have found that service awards of $10,000 to named plaintiffs are reasonable") (citing cases); *Fulford v. Logitech, Inc.*, No. 08-CV-02041 MMC, 2010 WL 807448, at *6, n.1 (N.D. Cal. Mar. 5, 2010) (collecting cases awarding service fees between $5,000 and $40,000).

## VI.    CONCLUSION

For the foregoing reasons, Co-Lead Counsel respectfully request that the Court enter an order (a) approving the payment of $2,621,443.96 in attorneys' fees, (b) approving the payment of $278,556.04 in reimbursed litigation expenses, and (c) approving the payment of $5,000 service awards to each of the named Plaintiffs.

DATED this 10th day of February, 2020.

**BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C.**

By: ___*s/ Andrew S. Friedman*___
    Andrew S. Friedman
    William F. King
    2325 E. Camelback Road, Suite 1100
    Phoenix, Arizona 85016

Paul L. Stoller
**DALIMONTE RUEB STOLLER, LLP**
2425 E. Camelback Road, Suite 500
Phoenix, Arizona 85016
*Co-Lead Counsel*

Eric H. Gibbs (pro hac vice)
David Stein (pro hac vice)
Amanda M. Karl (pro hac vice)
**GIRARD GIBBS LLP**
505 14th Street, Suite 1110
Oakland, California 94612

Robert B. Carey (011186)
Leonard W. Aragon (020977)
Michella A. Kras (022324)
**HAGENS BERMAN SOBOL
SHAPIRO LLP**
11 West Jefferson Street, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900

*Class Executive Committee*

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing document filed through the ECF system on February 10, 2020 will be electronically sent to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to any non-registered participants.

Dated February 10, 2020.

*s/Karen Vanderbilt*

19