UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| In re Banner Health Data Breach Litigation | Case No. 2:16-cv-02696-SRB<br>**FINAL APPROVAL ORDER** |

This matter is before the Court on Plaintiffs' Motions and Memorandums of Law in Support of Final Approval and Requests for Attorneys' Fees, Expenses, and Service Awards as well as supporting declarations and exhibits (collectively "Final Approval Filings"). Plaintiffs, individually and on behalf of the proposed settlement class, and Defendant have entered into a Settlement Agreement (the "Settlement") that, if approved by the Court, will resolve the above-captioned litigation in its entirety. Having considered the Final Approval Filings and the Settlement Agreement together with all exhibits and attachments thereto, the record, and the briefs, and the Parties' presentations at the Final Approval Hearing, the Court hereby enters the following Order Granting Final Approval.

On December 5, 2019, Plaintiffs filed their Motion and Memorandum of Law in Support of Plaintiffs' (1) Motion for Preliminary Approval of Class Action Settlement, (2) Preliminary Certification of Settlement Class, and (3) Appointment of Settlement Class Counsel and Class Representatives. On December 11, 2019, the Court entered its Order Granting Motion for Preliminary Approval.

On February 10, 2020, under the terms of the notice requirements set forth in the Settlement and the Preliminary Approval Order, the Settlement Class was apprised of the

nature and pendency of the Litigation, the terms of the Settlement, and their rights to request exclusion, object, and/or appear and the Final Approval Hearing. On February 11, 2020, Plaintiffs filed their (1) Motion and Memorandum of Law in Support of Final Approval, (2) Joint Declaration of Co-Lead Counsel in Support Plaintiffs' Motion for Final Approval and Fee Declaration, (3) Motion and Memorandum of Law in Support of Requests for Attorneys' Fees, Expenses, and Service Awards, and (4) Declaration in Support of Final Approval and Award of Attorneys' Fees and Service Awards.

On April 21, 2020, the Court held a Final Approval Hearing to determine, among other things, (1) whether the Settlement is fair, reasonable, and adequate, and (2) whether the Court should enter judgment dismissing all claims in the Complaint with prejudice. Prior to the Final Approval Hearing, Class Counsel filed the original and supplemental Declaration of Jennifer M. Keough Regarding Notice Administration, confirming that the Notice Program was completed in accordance with the Parties' instructions and the Preliminary Approval Order. Therefore, the Court is satisfied that Settlement Class Members were properly notified of their right to appear at the Final Approval Hearing in support of, or in opposition to, the proposed Settlement, the award of attorneys' fees, costs, and expenses, and the payment of Service Awards to the Class Representatives.[1]

Having given an opportunity to be heard to all requesting persons in accordance with the Preliminary Approval Order; having heard the presentation of Class Counsel and counsel for Banner; having reviewed all of the submissions presented with respect to the proposed Settlement; having determined that the Settlement is fair, reasonable, and adequate; having considered the application made by Class Counsel for attorneys' fees,

---

[1] In light of the on-going COVID-19 pandemic, on April 9, 2020, the Court entered its Order providing that the Final Approval Hearing set for April 21, 2020 at 10:00 a.m. will be telephonic and that counsel shall not appear in person. In its Order, the court ruled that the "telephonic hearing will be held in open court in the event any objectors or other interested parties appear." As of April 14, 2020, the Court's Order providing for telephonic appearance was publicly posted on the settlement website.

costs, and expenses, and Service Awards to the Class Representatives, and having reviewed the materials in support of that application; and good cause appearing in the record, Plaintiffs' Final Approval Motion is **GRANTED**, Class Counsel's Motion for Attorneys' Fees, Expenses, and Service Awards is **GRANTED**, and:

**IT IS HEREBY ORDERED AND ADJUDGED** as follows:

1. Unless otherwise defined herein, all terms capitalized herein shall have the same meaning ascribed to those terms in the Settlement Agreement.

2. The Court has jurisdiction over this litigation, Plaintiffs, Defendant, and Settlement Class members, and any party to any agreement that is part of or related to the Settlement.

3. The Court finds that the Settlement represents the result of over ten months of arm's-length, informed, non-collusive negotiations between Banner and Plaintiffs and their counsel, including three separate mediation settings with two different mediators.

4. The Settlement is, in all respects, fair, reasonable, and adequate; in the best interests of the Settlement Class; satisfies Federal Rule of Civil Procedure 23; and is therefore approved. The Court finds that the Parties faced significant risks, expenses, delays, and uncertainties, including as to the outcome, of continued litigation in this matter, which further supports the Court's finding that the Settlement is fair, reasonable, adequate, and in the best interests of the Settlement Class.

5. The Court grants final approval of the Settlement, including, but not limited to, the releases in the Settlement and the plans for distribution of the Settlement relief. Therefore, all Settlement Class members (as defined in § II ¶ 18(dd) of the Settlement Agreement) are bound by the Settlement and this Final Approval Order.

6. The Settlement and every term and provision thereof shall be deemed incorporated herein and shall have the full force of an order of this Court.

7. The Parties shall effectuate the Settlement in accordance with its terms.

## CLASS CERTIFICATION

8. For the purposes of the Settlement and this Final Approval Order, the Court hereby finally certifies for settlement purposes only the following Settlement Class:

> All persons who were notified by Banner that their personal information may have been compromised as a result of the Security Incident. Excluded from the Settlement Class are the officers and directors of Banner during the Class Period, the Judge presiding over this action and her Honor's courtroom staff, and those entities that timely and validly request exclusion from the Settlement Class.

The Settlement Class is limited to those individuals who were originally notified by Banner that their personal information may have been compromised as a result of the Security Incident in accordance with § II ¶ 18(dd) of the Settlement Agreement.

9. The Court finds that for settlement purposes, the Settlement Class meets all the requirements of Federal Rule of Civil Procedure 23(a) and (b)(3), namely that the Settlement Class is so numerous that joinder of all members is impractical; there are common issues of law and fact; the claims of the Settlement Class Representatives are typical of absent Settlement Class members; the Settlement Class Representatives have and will fairly and adequately protect the interests of the Settlement Class, as they have no interests antagonistic to or in conflict with the Settlement Class and have retained experienced and competent counsel to prosecute this matter; common issues predominate over any individual issues; and a class action is superior to any alternative means of adjudicating the controversy.

10. The Court grants Final Approval to the appointment of Plaintiffs as Settlement Class Representatives. The Court concludes that the Settlement Class Representatives have fairly and adequately represented the Settlement Class and will continue to do so.

11. The Court grants Final Approval to the appointment of Andrew S. Friedman of Bonnett, Fairbourn, Friedman & Balint, P.C., and Paul L. Stoller of Dalimonte Rueb

Stoller, LLP, as Co-Lead Counsel for the Settlement Class. The Court grants Final Approval to the appointment of Eric H. Gibbs of Gibbs Law Group LLP and Robert B. Carey of Hagens Berman Sobol Shapiro LLP, as Class Executive Committee Counsel for the Settlement Class. The Court concludes that Class Counsel and the Class Executive Committee Counsel have adequately represented the Settlement Class and will continue to do so.

## NOTICE TO THE SETTLEMENT CLASS

12. The Court finds that the Notice Program, as set forth in the Settlement and effectuated pursuant to the Preliminary Approval Order, satisfied the requirements of due process and Federal Rule of Civil Procedure 23, was the best Notice practicable under the circumstances, was reasonably calculated to provide—and did provide—due and sufficient Notice to the Settlement Class of the pendency of the Litigation; certification of the Settlement Class for settlement purposes only; the existence and terms of the Settlement; the identity of Class Counsel and appropriate information about Class Counsel's then-forthcoming application for attorneys' fees and incentive awards to the Class Representatives; appropriate information about how to participate in the Settlement; Settlement Class members' right to exclude themselves; their right to object to the Settlement and to appear at the Final Approval Hearing, through counsel if they desired; and appropriate instructions as to how to obtain additional information regarding this Litigation and the Settlement. In addition, the Notice properly informed Settlement Class members that any Settlement Class member who failed to opt-out would be prohibited from bringing a lawsuit against Defendant and its related Parties based on or related to any of the claims asserted by Plaintiffs, and it satisfied the other requirements of the Civil Rules.

13. The Claims Administrator's fees, as well as all other costs and expenses associated with Notice and Claims Administration, will continue to be paid by Banner as provided in the Settlement.

5

**OBJECTIONS AND OPT-OUTS**

14. The Court has reviewed the sole objection by Mark Fairall and his wife, Carol Buck, filed on February 26, 2020 (the "Objection"). [Doc. 189.]

15. The Objection generally asserts that (a) Mr. Fairall and Ms. Buck should have been selected to serve as class representatives and therefore should be awarded $20,000 from Class Counsels' requested fee; (b) Co-Lead Counsel, Bonnett Fairbourn Friedman & Balint, PC ("BFFB"), had a conflict of interest; and (c) had Mr. Fairall and Ms. Buck been selected to serve as class representatives, "the low $6 million Banner Health settlement offer would have been substantially more." [Doc. 189 at 4.]

16. For the following reasons, the Court overrules the Objection.

17. "[O]bjectors to a class action settlement bear the burden of proving any assertions they raise challenging the reasonableness of a class action settlement." *In re Google Referrer Header Privacy Litig.*, 87 F. Supp. 3d 1122, 1137 (N.D. Cal. 2015) (citing *United States v. Oregon*, 913 F.2d 576, 581 (9th Cir. 1990)); *see Schechter v. Crown Life Ins. Co.*, 2014 WL 2094323, at *2 (C.D. Cal. May 19, 2014) (objector bears burden to show that settlement approval would contravene its equitable objectives); *see also Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015) (noting the Ninth Circuit maintains "a strong judicial policy" that favors class action settlements and it "is the nature of a settlement, as a highly negotiated compromise . . . that it may be unavoidable that some class members will always be happier with a given result than others.") (internal quotation marks omitted); *see generally Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) ("The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators.").

18. First, there is no colorable contention that the named Settlement Class Representatives failed to adequately represent the interests of the Settlement Class. Each

of them fulfilled their duties in good faith and cooperated with Class Counsel to secure the proposed Settlement. The Court previously noted as much in its order granting preliminary approval of the Settlement Agreement. [Doc. 175 at ¶ 8 ("The Court preliminarily finds that … the Settlement Class Representatives will fairly and adequately protect the interests of the Settlement Class."); ¶ 10 ("The Court hereby appoints Howard Chen, Betty Clayton, Stacey Halpin, Kim Maryniak, Summer Sadira, and Stan Griep as Settlement Class Representatives.").] The Objection fails to provide factual or legal support to the contrary.

19. Mr. Fairall's and Ms. Buck's personal disappointment that they were not selected to serve as additional class representatives, their undescribed and unsupported assertions that there have been "due process" violations, and their requests for two $10,000 service awards, all of which are premised on their own "specific circumstances," amount to unsubstantiated assertions by only two Settlement Class members of a Settlement Class consisting of approximately 3 million. These objections are not only unsubstantiated by any evidentiary proof or legal authority, they represent individualized and idiosyncratic concerns that are inapplicable to Settlement Class as a whole. *Roberts v. Marshalls of CA, LLC*, 2018 WL 510286, at *10-11 (N.D. Cal. Jan. 23, 2018) (overruling objection to class settlement based on objector's unique circumstances: "nothing in Ms. Michaels' objection suggests this is a class-wide issue, rather than an individual one").

20. The Objection further asserts without any factual basis whatsoever that, had Class Counsel selected Mr. Fairall and Ms. Buck to serve as proposed class representatives, the settlement benefits "would have been substantially more." [Doc. 189 at 4.] Such speculative conjecture that some different or better settlement benefits could have been achieved is not entitled to consideration by the Court and is inconsistent with prevailing Ninth Circuit precedent recognizing that "[s]ettlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon v. Chrysler Corp.*, 150

F.3d 1011, 1027 (9th Cir. 1998); *Roberts v. Electrolux Home Prods., Inc*., 2014 WL 4568632, at *11-12 (C.D. Cal. Sept. 11, 2014) (quoting same). Simply arguing that the recovery in the case should have been better does not render the Settlement Agreement itself unfair, unreasonable, or inadequate. *See, e.g., Negrete v. Allianz Life Ins. Co. of N. Am*., 2015 WL 12592726, at *8 (C.D. Cal. Mar. 17, 2015) ("That the Objectors may have made another bargain is beside the point; settling parties need not find the most ideal terms.").

21. Similarly, the Objection fails to establish any conflicts of interest.

22. Prior to filing the Amended Consolidated Complaint, Class Counsel determined not to represent Mr. Fairall or Ms. Buck, and thus they were not selected to serve as proposed class representatives. The Amended Consolidated Complaint was then filed on March 3, 2017. [Doc. 71.] On February 10, 2018, nearly a year later, Mr. Fairall allegedly sustained injuries from an electric shock while attempting to unplug a motorized shopping cart at his local Fry's grocery store. Mr. Fairall later sued Fry's on October 25, 2019, in Maricopa County Superior Court. Fry's thereafter retained a lawyer at one of Class Counsel's firms, Bonnett, Fairbourn, Friedman & Balint, PC ("BFFB"), to defend against Mr. Fairall's claims.

23. Disregarding that his alleged injuries occurred long after the Amended Consolidated Complaint was filed in this case and, more importantly, that BFFB never agreed to represent him, Mr. Fairall asserts that BFFB had a conflict of interest under Arizona Supreme Court Rules, Rule 42, ER 1.7. Mr. Fairall tethers this assertion to his contention that BFFB represented him as a member of a putative class in this action, while simultaneously representing Fry's in defense of his personal injury claims. Mr. Fairall's conflict accusations are misguided. As Mr. Fairall himself acknowledges, BFFB never represented him in an individual capacity nor as plaintiff or proposed class representative in this action. [Objection at 4 ("We have been told that this is not a conflict of interest

8

because we are only class members"); Joint Reply Decl., ¶ 18.] And, as the comment to ER 1.7 confirms, Mr. Fairall did not become a BFFB client solely by virtue of his status as a putative class member: "When a lawyer represents or seeks to represent a class of plaintiffs or defendants in a class-action lawsuit, unnamed members of the class are ordinarily not considered to be clients of the lawyer for purposes of applying paragraph (a)(1) of this Rule [ER 1.7]." Arizona Supreme Court Rules, Rule 42, ER 1.7, cmt. 24. *See also* ABA Model Rule of Prof'l Conduct 1.7 & cmt. 25 ("When a lawyer represents or seeks to represent a class of plaintiffs or defendants in a class-action lawsuit, unnamed members of the class are ordinarily not considered to be clients of the lawyer for purposes of applying paragraph (a)(1) of this Rule."); *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 965 F. Supp. 2d 104, 115 (D.D.C. 2013) ("Consistent with this case law, the ABA has clarified that Rule 1.7 of the ABA Model Rules of Professional Conduct ("Model Rules")—the model rule on which [ER 1.7] is based—permits class counsel to sue or otherwise oppose unnamed class members in unrelated litigation because unnamed members of the class ordinarily are not considered clients of class counsel.").

24. Because BFFB never represented Mr. Fairall in any capacity other than an absent member of a putative class, and considering that Mr. Fairall knew and acknowledged as much, all as set forth in his e-mails dated December 16, 2016, March 31, 2018, and April 9, 2018, there is simply no factual basis for Mr. Fairall's attempt to create a conflict of interest where none exists, nor is there any legal basis for his conflict assertion under E.R. 1.7. The Objection's conflict assertions are accordingly overruled. Although unnecessary to this conclusion, the Court also notes that the Settlement Class was ably represented by numerous other experienced and highly qualified counsel for whom Mr. Fairall has asserted no conflict of interest.

25. Last, the Objection claims in conclusory fashion that the proposed Settlement is "not fair, reasonable, or adequate." But again it fails to provide any specific evidence to

support this claim, let alone sufficient evidence to rebut the evidentiary record establishing that the Settlement is fair, reasonable, and adequate and was reached through arm's-length negotiation between experienced Parties in mediations overseen by two experienced mediators. *Anderson v. Nextel Retail Stores, LLC*, 2010 WL 8591002, at *15 (C.D. Cal. Apr. 12, 2010); *see also In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1171 (S.D. Cal. 2007) ("the fact that the settlement agreement was reached in arm's length negotiations after relevant discovery [has] taken place create[s] a presumption that the agreement is fair") (quoting *Linney v. Cellular Alaska P'ship*, 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997) aff'd, 151 F.3d 1234 (9th Cir. 1998)); *Adams v. Inter-Con Sec. Sys., Inc.*, 2007 WL 3225466, at *3 (N.D. Cal. Oct. 30, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."). [*See also* Doc. 184, Jt. Final Approval & Fee Decl., ¶¶ 32-36.]

26. Notwithstanding the lack of any evidence undermining the Settlement's established fairness, it appears that Objection's substantive complaints relate only to (a) the duration and features of the Identity Guard credit and identity monitoring product, and (b) the funds available to pay Ordinary and Extraordinary Claims for Expense Reimbursement.

27. The Objection claims that the credit-and-identity monitoring product offered by Identity Guard to all Settlement Class members over a two-year term is "insufficient" and should, at a minimum, "be in effect for 10 years." [Objection at 4.] The Objection also takes issue with the Identity Guard product itself, arguing that it does not cover medical-identity theft, and that the Identity Force product "is a far better credit monitoring system." [*Id.*]

28. These objections to the quality and duration of the Identity Guard product are yet again nothing more than a wishful desire for different, "better" settlement terms. *Benedict v. Diamond Resorts Corp.*, 2013 WL 12149277, at *2 (D. Haw. June 6, 2013)

10

(overruling objection that settlement "does not go far enough" because defendants "should be responsible for 100% of the water intrusion repair costs"); *accord Evans v. Linden Research, Inc.*, 2014 WL 1724891, at *4 (N.D. Cal. Apr. 29, 2014) (overruling objection the settlement could have been better by providing different or additional relief); *Ross v. Trex Co.*, 2013 WL 6622919, at *4 (N.D. Cal. Dec. 16, 2013) (same).

29. Nonetheless and after careful review, the Court has determined that the coverage and duration of Identity Guard's credit-monitoring and identity-protection services are directly on par with, if not superior to, comparable products offered in similar data breach settlements. *See also In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 2019 WL 3410382, at *23 (D. Or. July 29, 2019) (granting preliminary approval of settlement, noting the credit monitoring and identity protection services [offered by Identity Guard] added "significant value to the Settlement Class"); *In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*, 2016 WL 6902351, at *4 (N.D. Ga. Aug. 23, 2016)* (granting final approval and noting "18 months identity monitoring services [from Identity Guard] also confers a substantial benefit to the Settlement Class"); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 319 (N.D. Cal. 2018) (discussing benefits to class of two-year credit monitoring subscription); *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 2020 WL 256132, at *17 (N.D. Ga. Mar. 17, 2020) ("This Court has repeatedly lauded high-quality credit monitoring services as providing valuable class-member relief that would likely not otherwise be recoverable at trial, as have other courts in connection with other data breach settlements."). The Court notes that the duration and terms of the Identity Guard credit monitoring and protection services provided by the Settlement are the same or substantially similar to comparable products that other courts have endorsed in data breach settlements approved in several other major data breach cases. *See e.g. In re Experian Data Breach Litig.*, Case No. SACV 15-01592 AG (DMFx) (C.D. Cal. May 10, 2019), Doc. 322, "Order Regarding Motion for Final Approval of Class Action Settlement

and Motion for Attorney's Fees;" *In re Premera Blue Cross Customer Data Security Breach Litigation*, Case No. 3:15-md-2633-SI (D. Or. Mar. 2, 2020), Doc. 311, "Order Granting Final Approval of Class Action Settlement" and Doc. 273-1, "Settlement Agreement;" *accord In re Home Depot*, *supra*.

30. The benefits of Identity Guard's product aside, the Settlement is the product of informed, prolonged litigation, intense negotiations and three separate mediations—all of which were preceded by approximately two years of motion practice, formal and informal discovery, hours of expert consultation, document review, and other important case analysis. [*See* Doc. 184, Jt. Final Approval & Fee Decl., ¶¶ 8-36.] The chosen provider and duration of the credit and identity monitoring product are the end result of the negotiation process, during which the Parties considered and evaluated alternative products from comparable prior data breach settlements, and the potential benefits of settlement versus the very real risks of continued litigation. [*See id*.] *See also e.g. In re Home Depot*, 2016 WL 6902351, at *5 ("Courts presiding over similar cases have recognized that the 'legal issues involved [in data breach litigation] are cutting-edge and unsettled, so that many resources would necessarily be spent litigating substantive law as well as other issues.'") (citation omitted). The Objection to the quality and duration of the negotiated Identity Guard product is thus overruled.

31. The Objection also misconstrues the Settlement's terms and mechanics insofar as it suggests that any award of attorneys' fees and costs will be deducted from the $6 million cap on Settlement Class members' claims for Ordinary and Extraordinary damages, leaving only $3.1 million to fund valid claims (assuming the Court awards the full amount of the $2.9 million in fees and costs requested). This assertion is incorrect. As set forth in ¶ 24 of the Settlement Agreement, the $6 million cap applies only to the total amount of payments for Ordinary and Extraordinary Expense Reimbursement: "Total payments under Paragraph 21 and Paragraph 22 to all Settlement Class members for

ordinary and extraordinary expense reimbursement shall not exceed $6,000,000 (the "Claims Made Settlement Cap"). [Doc. 171-1.] Banner will separately fund any award of attorneys' fees and costs. Thus, the Objection on this point is accordingly overruled. *See In re Equifax*, 2020 WL 256132, at *35 ("First, most of the objections to the motion for fees are conclusory, do not provide any legal support for why a lower fee should be awarded, or are based on a misunderstanding about the terms of the settlement. These objections can be summarily rejected.").

32. The Court accordingly overrules the Objection in its entirety.

33. All Settlement Class members who have not objected to the Settlement in the manner provided in the Settlement are deemed to have waived any objections to the Settlement, including, but not limited to, by appeal, collateral attack, or otherwise.

34. A list of putative members of the Settlement Class who have timely and validly elected to opt-out of the Settlement and the Settlement Class, in accordance with the requirements in the Settlement (the "Successful Opt-Outs"), has been submitted to the Court as an attachment to the Supplemental Declaration of Jennifer M. Keough, filed in advance of the Final Approval Hearing. That anonymized list, which JND prepared to preserve the identity of those opt-out members using its own unique numbering sequencing, is attached as Exhibit A to this Order. The persons listed in Exhibit A are not bound by the Settlement or this Final Approval Order, and they are not entitled to any of the benefits under the Settlement.

**AWARD OF ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS**

35. The Court has considered Class Counsel's Fee Application along with the declarations submitted by Counsel setting forth their time and expenses incurred in connection with this Litigation.

36. The Court finds that the attorneys' fees requested by Class Counsel are fair

and reasonable, given Class Counsel's lodestar of over $3,457,746.50, the results achieved through this Litigation, and the contingent nature of the fee. The Court has reviewed the records submitted by Class Counsel and finds Class Counsel reasonably spent 6,532.80 hours representing the Settlement Class's interests through this Litigation, that Class Counsel's hourly rates are reasonable and in line with the prevailing rates in the community for complex class action litigation, and that the $278,556.04 in litigation expenses and charges incurred to prosecute this Litigation were reasonable. Similarly, the requested fee award of $2,900,000 is reasonable when considering it in proportion to the benefits made available to, and claimed by, the Settlement Class. The aggregate value of the benefits claimed by the Settlement Class included reimbursement of up to $500 each for Ordinary Expenses and up to $10,000 each for Extraordinary Expenses incurred as a result of the Security Incident, $14,497,680 for every one percent (1%) of the Settlement Class members when considering the retail value of the credit monitoring and insurance benefits, and substantial injunctive relief in the form of commitments by Banner to implement specific future improvements and practices to protect the Settlement Class's PII, PHI, and PCI.  The fee award requested is estimated to represent approximately 3.276% of the benefits to the Settlement Class, and is therefore reasonable.  Accordingly, Class Counsel are hereby awarded $2,900,000 in attorneys' fees (inclusive of reimbursement of Class Counsel's litigation costs). This award of attorneys' fees and costs is independent of the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement.

37.     The Court further finds that the requested incentive awards of $5,000 to each individual Settlement Class Representative, as provided in the Settlement Agreement, are fair and reasonable given the time and effort expended by the Settlement Class Representatives on behalf of the Settlement Class. Pursuant to the Settlement Agreement, the incentive awards are to be paid by Banner.

**OTHER PROVISIONS**

38.   The Parties to the Settlement shall carry out their respective obligations as set forth in the Settlement Agreement.

39.   Within the time period set forth in the Settlement, the relief provided for in the Settlement shall be made available to the Settlement Class members submitting valid Claim Forms under the terms and conditions of the Settlement.

40.   The Releases set forth in the Settlement Agreement, including those described in § V of the Settlement Agreement, are incorporated herein, and—as of the Effective Date and by operation of this Final Approval Order—are binding and effective on all Settlement Class members who have not properly excluded themselves from the Settlement Class.

41.   The Court hereby dismisses the Litigation and Complaint and all claims therein on the merits and with prejudice, without fees or costs to any party, except as provided in this Final Approval Order.

42.   The Court hereby retains continuing jurisdiction over: (1) implementation of the Settlement; (2) further proceedings, if necessary, on applications for attorneys' fees, expenses, and costs in connection with the Litigation and the Settlement; and (3) the Parties and the Settlement Class members for the purpose of construing, enforcing, and administering the Settlement Agreement and all orders and judgments entered in connection therewith.

Dated this 21st day of April, 2020.

_____
Susan R. Bolton
United States District Judge